*Collateral inheritance tax — property within this State is subject to it — right to a legacy, not taxable — situs of a debt — property of a non-resident decedent, when taxable — debts due him from residents are not taxable.*

The determination of the question whether a tax can be imposed upon the property of a non-resident decedent under the provisions of chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887 and chapter 215 of the Laws of 1891, involves the inquiry as to whether the decedent had any property within the State of New York at the time of his death; if he had, the tax can be imposed, otherwise not.

The right to a legacy, given by the will of a resident of the State of New York, cannot be considered property located within the State for the purposes of the collateral inheritance tax.

The *situs* of a debt is not determined by the residence of the debtor, but by the domicile of the creditor.

The *situs* of personal property is presumptively the domicile of its owner and its disposition is controlled by the laws of such domicile, but for certain purposes of taxation a different rule obtains.

Where the resident of another State dies the owner of personal property which he has habitually kept invested in the State of New York, it is liable to taxation, but if a resident of another State dies leaving debts due him by residents of the State of New York, such debts are not the subject of taxation as being the property of the decedent within the State of New York.

APPEAL by Benjamin Phipps, executor of the last will and testament of John A. Phipps, late of Boston, Massachusetts, deceased, and ancillary executor of said will, from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of the New York Surrogate's Court on the 11th day of September, 1893, affirming an order of said Surrogate's Court, dated the 24th day of February, 1893, assessing a tax upon such estate.

*J. H. Dougherty*, for the appellant.

*E. J. Levey*, for the respondents.

VAN BRUNT, P. J.:

Elizabeth Fogg, a resident of this State, died on the 3d day of January, 1891, leaving a last will and testament, which was admitted to probate on the 15th of April, 1891. By her will she gave

and devised all her residuary estate, some of which consisted of real estate, but where situated does not appear, equally to Hiram Fogg, of Bangor, Maine, and John A. Phipps, of Boston, Mass. In January, 1892, Phipps died at said Boston, leaving a will which on February 1, 1892, was duly admitted to probate in the county of Suffolk, Mass., the domicile of the decedent at the time of his death. An exemplified copy of the will was on the 20th October, 1892, filed and recorded in the office of the surrogate of the county of New York, by whom ancillary letters testamentary were duly issued. The executors of Elizabeth Fogg's will took proceedings under the Collateral Inheritance Acts for a determination of the value of the property passing by her will subject to taxation and the fixing of said tax. The proceedings resulted in an order fixing the amount of her estate subject to tax, including the legacy to Phipps, which was taxed at the rate of five per cent. The tax was paid by the executors to the comptroller of the city and county of New York. The legacy to Phipps was never paid to him, nor was it in a condition to be paid, he having died while Mrs. Fogg's estate was unsettled. By his will he gave his estate to his widow. This proceeding was instituted by the ancillary executor for the purpose of having it determined what amount of inheritance tax, if any, he was liable to pay upon the legacy bequeathed by Mrs. Fogg to his testator Phipps. Such proceedings were had that the value of said legacy was ascertained, and it was determined that it was liable to the inheritance tax. An appeal was taken from the surrogate's order affirming the appraiser's report to the surrogate as prescribed by statute, and he, singularly enough, affirmed his previous decision, and from this order of affirmance the present appeal is taken.

The question involved upon this appeal depends upon the construction to be given to section 1 of chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887, as amended by chapter 215 of the Laws of 1891, the last-named statute being the one which was in operation at the time of the death of the testator, Phipps. The provisions of this act, as far as they are necessary to be considered in the disposition of this appeal, are as follows: "After the passage of this act all property which shall pass by will or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, or if

the decedent was not a resident of this State at the time of his death, which property or any part thereof shall be within this State * * * shall be and is subject to a tax at the rate hereinafter specified."

The determination of the question as to whether any tax can be imposed under the facts above stated, therefore, involves the inquiry whether the decedent had any property within this State at the time of his death. If he had, then under the principle announced in *The Matter of Romaine* (127 N. Y. 88) it is liable.

If he had not, then clearly there is nothing upon which the tax can operate.

In the consideration of this question it will not be necessary to note the difference between the law as it was originally enacted in 1885 and as it existed at the death of the testator, but simply to determine the question as to whether a right to a legacy given by the will of a resident of this State can be considered property located within this State. It seems to us that the mere statement of the proposition carries its answer with it, when we consider that the residence of a debtor does not fix the *situs* of the debt, but rather the domicile of the creditor.

It is a familiar principle that the *situs* of personal property is presumptively the domicile of its owner, and its disposition is controlled by the laws of such domicile. But for certain purposes of taxation a different rule has obtained because of statutes passed to prevent non-residents having the protection of our laws for their property which is invested and kept within this State without contributing to the expense of such protection. And it is in the same line of legislation that the statute of 1891 has been passed; and consequently where a resident of another State dies the owner of personal property which he has habitually kept and invested in this State, it is liable to taxation, as has been adjudicated in the case of *Romaine*, above cited. But it has not yet been determined that if a resident of another State dies, having debts due him by residents of this State, that those debts are the subject of taxation as being the property of the decedent within this State. That such property is not the subject upon which the act in question was intended to operate seems to have been intimated in the case of *Swift* (137 N. Y. 77), where the property the subject of taxation is likened to

realty, being tangible and located within the limits of the State, as was the fact in reference to the estate of Romaine. But a mere chose in action, a right to recover a sum of money, has never, as yet, been given the attribute of tangibility, and this seems to be all that Phipps had at the time of his death. He had a right to claim the amount of money which his share of the residuary estate of Mrs. Fogg would result in, nothing more; no particular piece of property, no particular sum of money, no particular representatives of money or property. And until this residuary estate was ascertained by an accounting of the executors, the legatee might not be even able to maintain an action for its recovery. It would appear, therefore, that a tax in this proceeding has been levied upon a legacy which not only had never been realized, but the right to the possession of which had never accrued. And if, as intimated in *The Matter of Romaine*, it was not the intention to attempt to levy a tax upon property, except such as the owner at the time of his death voluntarily permitted to remain in the State, how can such a tax be levied upon property which the decadent has never had it in his power to remove, if this unrealized legacy can be called property within this State? In other words, can this act be construed to cover a right at some future time to receive a sum of money, or to recover a debt?

We think, clearly, it cannot, and that all that it was intended to cover was tangible property kept within this State by the decedent, and that property which is transiently here, as upon the person or in the baggage of a man suddenly dying within this State, was never intended to be covered by the provisions of the act. If the claim advanced in support of the tax in the case at bar is to prevail, then in every case such as has been cited must the tax be collected, which never could have been the intention of the Legislature.

We think, therefore, that the right to this legacy, which had never been reduced to possession and which was kept within this State without the will of the decedent, is not the subject of taxation under the acts in question, and the order appealed from should be reversed, with costs.

FOLLETT and O'BRIEN, JJ., concurred.

Order reversed, with costs.