VAN BRUNT, P. J., PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Order affirmed, with costs.

---

In the Matter of the Appraisal under the Transfer Tax Act of the Property of ZEFITA, COUNTESS DE ROHAN CHABOT, Deceased.

BIRD S. COLER, as Comptroller of the City of New York, Appellant; JENNIE McLANE, Respondent.

*Transfer tax — on a remainder passing to the legatee of a remainderman — on property passing to the legatee of an appointee who dies the day on which the will exercising the power is proved — on a right to receive a legacy from an estate not yet administered.*

Where a son bequeaths property to his mother for life with remainder to his sister, the sister is entitled to the property immediately upon the death of the mother, and a legatee of the sister takes such remainder subject to the transfer tax.

Where a decedent bequeaths property to his widow for life with remainder to his daughter subject to a power of appointment conferred on the widow, who exercises such power in favor of the daughter by a will which is admitted to probate on the same day on which the daughter dies, the property passes under the daughter's will and is subject to the transfer tax.

Where a mother bequeaths property to her daughter, who dies before the mother's estate has been administered upon by the mother's executor, the right of the legatee of the daughter to receive the legacy, after administration, is not such a property right as requires such legatee, before she has received the legacy, to pay the transfer tax thereon.

INGRAHAM, J., dissented as to the last proposition.

APPEAL by Bird S. Coler, as comptroller of the city of New York, from an order of the Surrogate's Court of New York county, entered in said Surrogate's Court on the 17th day of April, 1899, modifying an order assessing the value of decedent's estate and fixing the transfer tax upon said estate.

*William E. Kisselburgh, Jr.*, for the comptroller.

*Charles Frederic Adams*, for the respondent.

RUMSEY, J.:

The respondent is the residuary legatee under the will of Zefita, Countess De Rohan Chabot, who died on the 29th of February, 1896, being at that time a non-resident of this State, but of Paris, France. The surrogate of New York county made an order appointing an appraiser to ascertain her estate for the purpose of assessing the amount of the transfer tax. Upon the appraisal then made a transfer tax was assessed, not only upon certain real property of which she died seized in the city of New York, but upon a very considerable amount of personal property of which she was said to be the owner. The personal property upon which the transfer tax was assessed consisted of bonds of various corporations and stock of New York corporations, actually situated within the State of New York. In addition to those securities there were stocks of corporations which were not within the State of New York, but those stocks were not attempted to be assessed, and no question is raised here concerning them. From the order of the surrogate assessing the personal property an appeal was taken, and the surrogate upon the appeal modified his first order by striking out the entire assessment against the personal property and leaving the transfer tax only upon the real estate. From that order this appeal is taken by the comptroller.

The facts are that in 1873 Henry Heyward, the father of this decedent, by his will bequeathed a certain portion of his property to his wife Zefa for her life, and upon her decease or remarriage he bequeathed the said property to his son Frank and to his daughter Zefita, or to the survivor of them. By the same will the remainder to the children was subject to the power given to Mrs. Heyward to appoint by her last will and testament that share or any part thereof to such of the testator's lineal descendants, and in such proportions,

as she might see fit. Mrs. Heyward, the widow, enjoyed the life estate until her death in 1895. Henry Heyward's son Frank, by his last will and testament, gave all his estate to his mother, Zefa Heyward, for her life, with remainder over to his said sister Zefita, the decedent. Mrs. Heyward's will was contested, but was admitted to probate on the 29th day of February, 1896 — the very day on which the Countess Zefita died. Her executor duly qualified. The estate which she transferred consisted of securities situated in the city of New York. Zefa Heyward and the Countess Zefita were both non-residents of this State, residing in France. Jennie McLane, the respondent here, who was the residuary legatee of the Countess Zefita, also is a non-resident of this State.

It is insisted by the learned counsel for the comptroller that all the personal property which passed to the Countess Zefita after the death of her mother, except the stocks of the foreign corporations above referred to, was liable to a transfer tax before it could be paid over to her legatees, and the question presented is, whether this contention is correct. The personal property which might be liable to the tax is easily divisible into three groups. In the first place, there is the property which Mrs. Heyward took by bequest from her son Frank, of which she had a life estate, and the remainder in which went at her death to the Countess Zefita. As to this property there can be no question that the Countess Zefita was entitled to it immediately upon the death of her mother, and that Mrs. Heyward's executor never had any title to it, so that the Countess Zefita was the actual owner of this property immediately upon the death of Mrs. Heyward, and required no process of administration upon the estate of Mrs. Heyward to entitle her to possess it. This property belonged to her at the time of her death, and it was, undoubtedly, subject to the transfer tax, within *The Matter of Whiting* (150 N. Y. 27).

Another portion of the property against which it is claimed that the tax should be assessed was that of which Mrs. Heyward had an estate for life under the will of her husband, with a remainder to the Countess Zefita, and with a power of appointment to Mrs. Heyward of that property. By Mrs. Heyward's will that power of appointment was executed to the Countess Zefita. In that property, also, Mrs. Heyward had only a life estate. It never went to her

executor, but immediately on her death it became the property of the appointee, and the appointee took title as of the time of the death of her father. (4 Kent's Comm. 387.)

It is very probable that the appointment could not take actual effect until the will of Mrs. Heyward had been admitted to probate; but none the less the title of the Countess Zefita, arising as it did from the death of the testatrix, and relating back to the time of the death of her father, actually vested the estate in her at the time when her mother died. For this reason this portion of the personal estate also actually belonged to the Countess Zefita at the time of her death, and was subject to the transfer tax.

But there is a considerable amount of personal property which was actually owned by Mrs. Heyward in her own right at the time of her death. By her will Mrs. Heyward bequeathed to her daughter, the Countess Zefita, absolutely all this property. The securities of which the property was composed were within the State of New York. It is claimed by the Comptroller that this property actually passed to the Countess Zefita at the death of Mrs. Heyward, and, therefore, it was liable to the transfer tax as her property. Mrs. Heyward died, as has been stated, in 1895. After a contest her will was admitted to probate on the 29th of February, 1896 — the very day of the death of her legatee, the Countess Zefita. The question presented is not whether this property is subject to a transfer tax in the hands of the executor of Mrs. Heyward, but whether the right of the Countess Zefita to have it paid over to her by the executor of Mrs. Heyward after it should have been administered upon, was such property as authorized the surrogate to levy a transfer tax upon it before it could be paid to the legatee of the Countess Zefita. It must not be forgotten that no question arises here as to the liability of this property for taxation before it can be paid to the legatee of Mrs. Heyward. It is still in the hands of Mrs. Heyward's executor, and her estate has not yet been administered upon, and no question is presented here as to whether it may be liable for taxation before Mrs. Heyward's executor can transfer it to the executor of the Countess Zefita, but the single question is whether this property which is in the hands of the executor of Mrs. Heyward and is not yet administered upon, and has not been paid over to the Countess Zefita, is now to be subject to a transfer tax against

FIRST DEPARTMENT, NOVEMBER TERM, 1899.    [Vol. 44.

the legatee of the Countess Zefita. The question must be decided as of the time when the appraisal was made. We are not called upon to determine whether this property, after it shall have been paid over by the executor of Mrs. Heyward to the executor of the Countess Zefita, must pay a transfer tax in his hands before it can be delivered to Miss McLane, the legatee of the Countess Zefita; no such question is presented. The question simply is, whether Miss McLane, who is entitled to receive this property ultimately, after it shall have been administered upon by the executor of the Countess Zefita, must pay a transfer tax now upon her right to receive it at some time in the future. The property is not now the property of the Countess Zefita, nor of her executor, but it actually belongs to the executor of Mrs. Heyward, who has the legal estate in it, who is not only entitled, but compelled, to hold the property subject to the claims of Mrs. Heyward's creditors, if there are any, and is not at liberty to pay it over until he shall have accounted for Mrs. Heyward's estate. During all that time there can be no doubt that the Countess Zefita had no interest whatever in this property itself. All that she had was the right to require the executor of Mrs. Heyward to render his account, and upon the settlement of that account to pay to her whatever might be found in his hands after the settlement of the estate. The amount of her legacy had not been ascertained when this appraisal was made, nor in the nature of things could it be ascertained without requiring an account from the executor of Mrs. Heyward. Until he had paid the debts of her estate it was his duty to hold this property. The nature of the right of the Countess Zefita was not then an interest in this identical property, but simply a right to receive whatever sum might be found after the accounting of Mrs. Heyward's executor to be in his hands applicable to the payment of this legacy. The case is precisely within *The Matter of Phipps* (77 Hun, 325; affd. on the opinion in the Supreme Court, 143 N. Y. 641). The facts were almost precisely like the facts here. There has been no change since that case was decided in the enumeration of the kinds of property which are subject to the transfer tax, but the case is on all fours with the case at bar, and must control it. In that case it appeared that a resident of this State had bequeathed a legacy to Phipps, who was a resident of Massachusetts. Phipps

never received the legacy, but died while the estate was still in course of administration. He bequeathed the legacy which he expected to receive to his widow, and the question was, what amount, if anything, the executor of Phipps was called upon to pay under the inheritance tax because of the bequest to Mrs. Phipps of the legacy which had been bequeathed to him. The court held that the right of Phipps' legatee to receive the legacy from the unadministered estate of Phipps' decedent was not property, but was a mere right, which was not subject to taxation, at least until the legacy had actually been paid by the executor of Phipps' decedent to Phipps' executor. This conclusion of the court was affirmed by the Court of Appeals, and the case is in point in the case at bar.

The conclusion, therefore, is, that so much of the personal property included in the appraisal as represented the securities which the executor of Mrs. Heyward held, but which upon the final administration of that estate would have been paid over as the legacy made by Mrs. Heyward to the Countess Zefita, is not now taxable under the collateral inheritance tax, and this portion of the modified order of the surrogate is, therefore, affirmed. The order of the surrogate must, therefore, be modified by levying the tax upon so much of the personal property mentioned in the appraisal as passed to the Countess Zefita by virtue of the bequest in remainder of her brother Frank Heyward, and so much of the personal estate of which Mrs. Heyward had a life estate under the will of her husband, and which passed by her appointment to the Countess Zefita, and as thus modified must be affirmed, without costs in this court to either party.

VAN BRUNT, P. J., BARRETT and McLAUGHLIN, JJ., concurred.

INGRAHAM, J.:

I concur with Mr. Justice RUMSEY that the property which came to the deceased from her father and her brother subject to the life estate of her mother was subject to taxation, but I cannot agree with his disposition of the question as to the liability of the personal property which was actually owned by Mrs. Heyward in her own right at the time of her death. This property belonged to Mrs. Heyward and was by her last will and testament devised

and bequeathed to the decedent absolutely. That it was property within this State and subject to its laws is conceded. Mrs. Heyward by her will left all of her property, after the payment of certain specific legacies, to the decedent, and while the formal legal title of her personal property vested in the executors for the purpose of administration, the beneficial interest in this property passed at once to the residuary legatee. It seems to me that this residuary legatee had something more than a right of action against the executors to recover a legacy. She had the absolute right to all the personal property of the decedent, except such a portion of it as was necessary to satisfy the specific legacies and pay the expenses of administration. While it is quite true that the *situs* of an indebtedness is determined by the residence of the creditor, where the question is as to the ownership of specific personal property, the *situs* of that property does not depend upon the domicile of the possessor, but upon the place where that specific property is situated. The title to this personal property which vests in the executors is merely the formal title which vests in them for the purpose of administration. The right to the property itself passed to the decedent as residuary legatee under the will of her mother. That will was admitted to probate upon the day of the decedent's death, and it must be presumed that, by the admission of the will to probate, the right of the decedent to the property was determined during her lifetime. She thus became the beneficial owner of the property, the formal legal title of which was in her mother's executors, and it was this ownership or right to the property that passed by her will to the respondent. By section 1 of the Transfer Tax Law (Chap. 399, Laws of 1892) it is provided that "Such tax shall also be imposed when any such person or corporation becomes beneficially entitled in possession or expectancy to any property, or the income thereof by any such transfer." Upon the death of her mother the decedent became entitled to the residuary estate either in possession or expectancy by her mother's will, and was thus subject to the tax.

The decision of the Supreme Court in *Matter of Phipps* (77 Hun, 326) must be read in connection with the decision of the Court of Appeals in *Mattter of Houdayer* (150 N. Y. 38), and the principle established by this latter decision must, I think,

· control. There the question was as to whether or not a sum of money deposited in a trust company in the city of New York to the credit of a non-resident was taxable as property located within this State. We held in that case that the deposit of this money, creating a mere relation of debtor and creditor between the decedent and the trust company, was not property located within this State and was not taxable. In reversing that decision Judge VANN, in speaking of the decision of this court, says : " In my judgment, this is sound reasoning upon an unsound basis, because it places form before substance. It enables a large sum of money, invested and left in this State and enjoying the protection of its laws, to escape taxation because the decedent had voluntarily commingled his own funds with those of an estate he represented, and for the further reason that his rights as against the trust company were intangible. But what were his rights, or those of his successors, as against the State of New York, in view of the command of its Legislature that all property, or interest in property, within the State susceptible of ownership, should be subject to a transfer tax upon the death of its owner whether he was a resident or non-resident ? What was the real thing, the essence of the transaction, that gives rise to this controversy ? * * * A reasonable test in all cases, as it seems to me, is this : Where the right, whatever it may be, has a money value and can be owned and transferred, but cannot be enforced or converted into money against the will of the person owning the right without coming into this State, it is property within this State for the purposes of a succession tax. Thus the right in question is property, because it is capable of being owned and transferred. It is within this State, because the owner must come here to get it. It is subject to taxation, because it is under the control of our laws. It has a money value because it is virtually money, or can be converted into money upon demand. It is subject to a transfer tax, because the passing, by gift or inheritance, of ' all property, or interest therein, whether within or without this State, over which this State has any jurisdiction for the purposes of taxation,'·comes within the expressed intention of the Legislature." It is true that this opinion does not seem to have been concurred in in its entirety by a majority of the judges of the court, but the result was concurred in, and the result in that case could only have

been reached by a determination that a deposit of money in this State where the technical relation of debtor and creditor was created between the depositor and the bank in which the money was deposited was property within this State and that the courts would look to the substance and not to the form in determining whether or not there was property within this State subject to taxation. Now, in this case it seems to me clear that there was substantial property within this State which belonged to this decedent and which-passed from her under the will to her residuary legatee. The specific personal property was here. The beneficial ownership of the property passed by her will to the respondent, and the mere fact that the formal legal title had vested in the executors for the purpose of administration does not affect the right or title that this respondent has to that property under the will of the decedent. Such a right to specific personal property within this State, that can be transferred, which is subject to our laws, and when the owner, to obtain possession of it, must come within this State, I think is property subject to taxation under the law of this State, and my conclusion is that the order of the surrogate should be entirely reversed, and the order entered upon the report of the appraiser restored.

Order modified as directed in opinion, and as modified affirmed, without costs in this court to either party.