BARTLETT, WOODWARD, HIRSCHBERG and HOOKER, JJ., concurred.

Order of the Surrogate's Court of Westchester county reversed, with ten dollars costs and disbursements.

---

In the Matter of the Appraisal, under the Act in Relation to Taxable Transfers of Property, of the Property of OTTO HUBER, Deceased.

COUNTY TREASURER OF KINGS COUNTY, Appellant; JOHN F. CLARKE and Another, as Executors of OTTO HUBER, Deceased, Respondents.

*Transfer tax — annuity to an executor and trustee together with his commissions — when, in the case of a life estate, the estate in remainder is presently taxable.*

A testator, by his will, provided: "I further direct that my executor and trustee John F. Clarke be paid from my estate the sum of fifteen hundred dollars annually, together with the commissions allowed by law, as long as he shall act as such executor and trustee, the same to be received by him in full compensation for any and all services, legal or otherwise, which he shall render my estate."

*Held*, that the annuity so bequeathed was subject to a transfer tax under the provisions of section 227 of the Tax Law (Laws of 1896, chap. 908).

The testator devised his residuary estate in trust for the benefit of his wife and daughter during their lifetimes with remainder to his next of kin and heirs at law or to the lawful issue of the daughter.

*Held*, that the transfer tax to which the estate in remainder was subject was presently payable.

Otto Huber, Sr., by his will, gave to his wife a life interest in his entire estate, and, upon the decease of his said wife, he gave such estate to his children in equal shares. The said Otto Huber, Sr., was survived by his wife and seven children, one of whom was Otto Huber, Jr. The greater portion of the estate of Otto Huber, Sr., consisted of brewery property, and in his will he provided for the creation of a corporation to which the property should be transferred. Otto Huber, Jr., was the president of such corporation for some years and up to the time of his death. The said Otto Huber, Jr., left a will, by which he transferred his interest in his father's estate, together with his other property, to his executors upon certain trusts.

*Held*, that the transfer tax, to which that part of the property passing under the will of Otto Huber, Jr., which came to him from Otto Huber, Sr., was subject, was presently taxable at the death of the said Otto Huber, Jr.

Appeal by the county treasurer of Kings county from an order of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 26th day of July, 1901, fixing the transfer tax upon the estate of Otto Huber, deceased.

*Julius Offenbach*, for the appellant.

*John F. Clarke*, for the respondents.

Woodward, J.:

This is a transfer tax proceeding, the county treasurer of Kings county appealing from an order of the Surrogate's Court modifying, and, as modified, affirming the *ex parte* order of the surrogate, entered upon the report of an appraiser. The decedent, a resident of Brooklyn, died March 22, 1900, leaving a last will and testament which was duly admitted to probate on the 9th day of April, 1900. The executors and the treasurer of Kings county both appealed from the formal order entered upon the report of the appraiser. The appeal of the executors was sustained, and that of the county treasurer overruled. From the order entered the county treasurer appeals to this court, urging four propositions.

By the terms of the will of Otto Huber, the decedent, who died in Brooklyn on the 22d day of March, 1900, it was provided: " I further direct that my executor and trustee John F. Clarke be paid from my estate the sum of fifteen hundred dollars annually, together with the commissions allowed by law, as long as he shall act as such executor and trustee, the same to be received by him in full compensation for any and all services, legal or otherwise, which he shall render my estate." The learned surrogate has held that this annuity of $1,500 per year was not subject to the transfer tax, and the county treasurer urges upon this appeal that under the provisions of section 227 of chapter 908 of the Laws of 1896, the learned court has fallen into error, and that Mr. Clarke's annuity is subject to the tax fixed by the appraiser at $979.80. In this contention we are persuaded that the appellant is right. Indeed, it is difficult to read the language of the section and arrive at any other con-

clusion, and the fact that the annuity may be presumed to have been given in payment for services to be rendered, does not change the law upon this question. The tax is laid "upon the transfer of any property, real or personal * * * when the transfer is by will," etc. (Laws of 1896, chap. 908, § 220, as amd. by Laws of 1897, chap. 284), and there can be no doubt that this annuity, whatever its purpose, was transferred by the will of Otto Huber, and accepted by Mr. Clarke. This question, it appears to us, was fully disposed of by the Court of Appeals in *Matter of Gould* (156 N. Y. 423), and the order of the Surrogate's Court in this respect should be reversed and the tax assessed originally should be imposed.

The decedent, after making the above provision for his executor and trustee, and bequeathing to his widow a cash legacy of $25,000 and releasing debts due from relatives, gave his remaining property to his executors in trust to invest the same, collect the rents, income and profits, and pay them to his widow, " as long as she shall live and remain my widow." Upon the death of his widow the decedent provided that the trustee pay the income to his daughter Helen during her life. If the daughter predeceased the widow then the capital was to be divided at the wife's death equally among the issue of the daughter her surviving. If, on the other hand, the daughter survived the widow, and was under twenty-one years of age when the widow died, the income was to be accumulated during the daughter's minority, and on her death the capital was to be divided in the same way as though she had predeceased her mother — that is, among her lawful issue. If the widow remarried, the trust as to her was to cease, and the rents, income and profits over and above the sum of $5,000 (to be paid to the wife during her life) was to be accumulated during the minority of the daughter, and on her death the *corpus* was to be divided, as before, among the lawful issue of said daughter. If the daughter died without lawful issue, then upon the death or remarriage of the wife the *corpus* was to be divided among the next of kin and heirs at law of the testator according to the statutes applicable to estates of intestates. It is apparent from the scheme of this will that the remaindermen entitled to the *corpus* of the estate after the death of the life tenants, the widow and the daughter, must be either the issue of the daugh-

ter or the next of kin and heirs at law of the testator, and the learned surrogate has held that these interests, not to be ascertainable, are not presently taxable. In this we are clearly of opinion that the court is in error. The court had this question under consideration in *Matter of Vanderbilt* (172 N. Y. 69) and *Matter of Brez* (Id. 609), and it was held in the former case (p. 72) that it was clear that "the Legislature by this amendment* intended to change the law upon the subject and to make the transfer tax upon property transferred in trust payable forthwith. The tax is not required to be paid by the conditional transferee, for, by the provisions of the statute, it is to be paid 'out of the property transferred.' So that whoever may ultimately take the property takes that which remains after the payment of the tax. This amendment makes provision for property transferred in trust. It, therefore, contemplates defeasible transfers as well as absolute transfers." It follows, therefore, that the order in this respect should be reversed.

A more difficult question is presented in respect to the transfer of the testator's interest in the estate of his father, Otto Huber, Sr. The latter died on the 31st day of August, 1889, leaving a last will and testament under date of July 15, 1887, which was duly admitted to probate in 1889. By the 4th paragraph of this will the testator gave to his wife, Emilie, "all the use, profits, rents, revenue and income of all my real and personal estate for and during her natural life;" and by the 5th paragraph, upon the decease of his said wife he gave "all the rest, residue and remainder of my estate to my children in equal shares." He was survived by his wife and seven children, so that it is evident that Otto Huber, Jr., the decedent in the present proceeding, was, at the time of his death, vested with an indefeasible remainder in fee in the one-seventh part of his father's estate, expectant upon the life estate of his mother, Emilie Huber. By the 11th paragraph of the will of Otto Huber, Jr., he declares: "It is my intention by this my last will and testament to dispose of all the property which I may now possess or may hereafter acquire, and more particularly all my right, title and interest in and to all property, both real and personal which I may have or hereafter acquire in the estate of my deceased father, Otto Huber,

---

* Laws of 1899, chap. 76, amdg. Laws of 1896, chap. 908, § 230.— [REP.

which interest is now subject to the life estate of my mother."
There can be no doubt, therefore, that Otto Huber, Jr., transferred
by will the portion of the property of his deceased father which
belonged to him, subject only to the life estate of his mother, and
the question presented upon this appeal is whether this transfer is
presently taxable. The testator transfers by his will all of his prop-
erty. The property which he received from his father, subject to
the life estate of his mother, was not separate and distinct from the
property which he owned in his own right, and a careful scrutiny
of the wills of Otto Huber, Sr., and Otto Huber, Jr., will show that
the purpose of both testators was to keep all of the property in the
control of the immediate family, and that it would be very difficult
to separate the property of Otto Huber, Jr., from that which he
received from his father. The greater portion of the father's estate
appears to have consisted of a brewery property. In his will he
provides for the creation of a corporation, to which the property is
to be transferred, and the stock is to be held by his immediate
family, who are his executors, and it is shown that the decedent,
Otto Huber, Jr., was the president of this corporation for some
years and up to the time of his death. Otto Huber, Jr., was, there-
fore, in fact possessed of the property, the absolute ownership of
which was vested in himself, subject only to the payment of the
income to his mother during her life, and by his will he transferred
this property in connection with his other property, to his executors
and trustees within this State. The tax is to be paid, not by the
transferee, but out of the property transferred, the ultimate owners
to take only that which remains after the payment of the tax
(*Matter of Vanderbilt, supra,* 69, 72), and there being no separate
property pointed out as having come from the father's estate, we
are unable to see any excuse for deferring the payment of the
transfer tax out of the property transferred. The decedent simply
transferred all his property, and he had a property right in the
estate of his father, by his will, and the statute (Laws of 1896,
chap. 908, § 230, as amd. by Laws of 1899, chap. 76) provides that
the tax shall be paid out of the property transferred. The mere
fact that some of this property may be subject to a life estate,
and that it may be in the hands of the trustees or execu-
tors charged with the duty of carrying out the trust, does not rob

it of the character of property, or prevent its transfer by will, and it not being distinguished from the other property conveyed by the will to his executors, it is no part of the duty of the courts to divide up the property transferred and to deprive the State of its present revenues upon a portion of the property thus transferred. It is not necessary now to decide what would be the status of the appellant if the decedent had 'left no other property than that of his father, which has not been reduced to possesssion, but the court, in *Matter of Zefita, Countess de Rohan-Chabot* (167 N. Y. 280, 284) very clearly intimates that in such a situation it would be the duty of the executors of the father's estate to see to it that the tax was paid before it was transferred to the representatives of the father's beneficiary. But here no such question is involved. The decedent has transferred all of his property to his executors and trustees, and there is an abundance of property in their hands to pay the tax out of the property so transferred, and it is the duty of those charged with the administration of the law to appraise the property thus transferred and to collect the tax fixed by law upon such transfer, leaving the beneficiaries under the decedent's will to take the property thus transferred, less the amount of the tax.

In *Matter of Phipps* (77 Hun, 325), relied upon by the respondents, the facts are not analogous to those here involved. Elizabeth Fogg, a resident of the State of New York, made a will, in which she gave and devised her residuary estate, some of which was real estate, but where located did not appear, to Hiram Fogg, of Bangor, Me., and John A. Phipps, of Boston, Mass. Phipps died at his home in Boston before the estate of Elizabeth Fogg had been administered, leaving by his will his interest in the estate to his wife. The question presented was whether the interest transferred by Phipps to his wife in the State of Massachusetts was taxable in the State of New York under the provisions of section 1 of chapter 483 of the Laws of 1885, as amended by chapter 713 of the Laws of 1887, and by chapter 215 of the Laws of 1891, and the court held that it was not, the decision going upon the principle that the mere chose in action transferred in another State, although relating to property which was within this State, because it had not been determined and transferred under the original will, was not property transferred by will within the meaning of the statute. The same principle was

involved in *Matter of Chabot* (44 App. Div. 340, 344), and the conclusions reached were subsequently affirmed by the Court of Appeals in *Matter of Zefita, Countess de Rohan-Chabot* (*supra*).

While it might be doubtful about the importance of determining the exact value of a single share of stock in the brewery property, if no other matters were involved, we are of opinion that it was proper to permit a cross-examination to determine the value of this stock, and this should be taken into consideration in determining the value of the property transferred.

The order appealed from should be reversed in respect to the points considered, and should be remitted to the surrogate for a new appraisal of the estate, in accordance with the foregoing opinion, with costs of this appeal.

GOODRICH, P. J., BARTLETT, HIRSCHBERG and HOOKER, JJ., concurred.

Order reversed and proceedings remitted to the surrogate for a new appraisal of the estate, in accordance with the opinion of WOODWARD, J., with costs of this appeal.

---

LEAVITT J. HUNT, as Trustee in Bankruptcy of the Estate of ROBERT A. OSBORN, Bankrupt, Appellant, *v.* CHARLES S. OSBORN and Others, Respondents.

*Payment under a guaranty of the indebtedness of a partner to his firm — construction of the will of the guarantor, giving a share of her estate to such partner, by him and the other parties in interest, charging such payments against his share — when conclusive as against his trustee in bankruptcy — when it is the proper construction.*

The special partnership of John Osborn, Son & Co. was composed of Frank, Charles, William and Robert A. Osborn, general partners, and Mary C. Osborn, their mother, a special partner. The said Mary C. Osborn executed an instrument in writing, by which she guaranteed the payment of any indebtedness which Charles, William or Robert A. Osborn should incur to the firm, such guaranty to extend "only to the extent of their separate interest they may have in any estate at my death in accordance with my will, which I intend to execute at the earliest moment possible."

She subsequently executed a will by which she provided for an equal distribution of her property among her children and the descendants of a deceased son. She directed in such will that "each of my children and their issue shall be