## INHERITANCE TAXES AND LIABILITY THEREFOR AS BETWEEN TWO SURETY COMPANIES.

Common Pleas Court of Hamilton County.

STATE, EX REL HUNT, PROSECUTING ATTORNEY, V. AMERICAN BONDING CO. AND NATIONAL SURETY CO.

Decided, 1913.

*Taxation—Inheritance Taxes Are Excise Taxes—Why Paid by Executor Instead of Distributees—Liability Therefor as Between Two Sureties, One on the Administration Bond and the Other on the Bond for Sale of Real Estate.*

1. Where an executor gave a general administration bond in the sum of two thousand dollars with one bonding company as surety, and afterward gave .bond in the sum of forty-six thousand dollars for sale of real estate with another bonding company as surety, and distributed the entire proceeds of the estate to legatees named in the will without paying the collateral inheritance tax due to the state of Ohio, and thereafter died insolvent and all the legatees are without the jurisdiction of the state, both surety companies are liable as co-sureties in their respective proportions to the state for payment of such collateral inheritance tax, notwithstanding the executor had personal property in his possession sufficient to pay such collateral inheritance tax before the sale of the real estate from the proceeds of which the legacies were paid.

2. Inheritance taxes are taxes on the right and privilege to inherit or succeed to property and are excise taxes and not taxes on the property received.

3. Although an executor is made liable under the statute for payment of collateral inheritance tax, such tax is not paid on account of the estate, but on account of the legatees or distributees whom the state is unwilling to trust.

*Pogue, Campbell & Groom,* for plaintiff.
*D. C. Outcalt,* for American Bonding Co.
*Healy, Ferris & McAvoy,* for National Surety Co.

MAY, J.

Demurrer to petition.

The state of Ohio, on relation of the prosecuting attorney, filed its petition against defendants, the American Bonding Company and the National Surety Company, alleging that J. Henry Sulser was appointed executor of the last will of Louis Ertel,

who died March 7, 1900, in case No. 49006 of the Probate Court of Hamilton County, Ohio, and executed a bond in the sum of $2,000 with the American Bonding & Trust Company as surety, and that afterwards, on July 24, 1900, he executed a bond in an action brought by him to sell real estate for the payment of legacies, in the sum of $46,000 with the National Surety Co. as surety. The $2,000 bond provided that the executor should "administer according to law and the will of the testator, all his goods, chattels, rights and credits and the proceeds of all his real estate sold for payments of debts or legacies, which comes to the possession of the executor or to the possession of any other person for him." The $46,000 bond contained the following:

"Now therefore, if the said J. Henry Sulser shall faithfully discharge his duties as executor of the aforesaid estate and shall faithfully make payment and account for all the moneys arising from such sale, according to law, then this obligation shall be void; otherwise remain in full force."

The state further alleges that the executor collected all the personal estate of the deceased and sold all of his real estate; that the said executor did not faithfully discharge his duties as executor of said Louis Ertel, deceased, and did not faithfully make payment and accounting according to law, of all moneys arising from the sale of the real estate, but failed, neglected and refused so to do; that on October 22, 1902, by an order of the probate court made in the administration of the estate of Louis Ertel, deceased, the executor was ordered to pay forthwith to the treasurer of Hamilton county the sum of $512.53 as interest, in view of the collateral inheritance tax due from the estate of Louis Ertel as found by an order in said cause made by the probate court, and that wherefore judgment is asked against the sureties, who upon demand refused to pay the judgment for said collateral inheritance tax as was found due.

To this petition the American Bonding Company filed its answer, admitting the execution of the bond and reciting the execution of the bond by the National Surety Company, admits the amount due as collateral inheritance tax and that the executor has failed to pay the same. The American Bonding Company further states "that by reason of the execution of said

bonds, this answering defendant and its co-defendant, the National Surety Company, became and were co-sureties for the faithful discharge of all duties by said executor and that they were respectively liable in proportion according to the amounts of their respective bonds; that the American became the surety for one-twenty-fourth, and the National Surety Company became the surety for twenty-three twenty-fourths of the amount of any default that might be made by any executor under the administration of such estate.''

The National Surety Company by its answer admits the appointment of the executor and the giving of a bond by him in the sum of $2,000 with the American Bonding & Trust Company as surety. The National Surety Company in its answer, first states that the bond so given was conditioned upon the faithful administration of the trust by said executor. It also admits that it gave a bond on July 24, 1900, for the sum of $46,000, on condition that the executor would faithfully discharge his duties as executor and faithfully make payment and accounting for all moneys arising from the sale of real estate according to law. The National Surety Company in its answer further avers that the collateral inheritance tax claimed by the state, became due and payable immediately upon the death of the testator, Louis Ertel, and at once became a lien upon the property of his estate both real and personal, and that the executor upon his appointment took title to all the personal property which came into his hands at the time he was appointed and gave bond with the American Bonding & Trust Company as surety, and that prior to the giving of the bond by the National Surety Company, the executor had in his hands more than $3,000 in money, the proceeds of personal property, which sum of money was more than sufficient for the payment of funeral expenses, of the expenses of administration and debts entitled to preference under the laws of the United States, and all public rates and taxes, including the inheritance tax sued for, and that because said executor did not pay the collateral inheritance tax out of the money realized from the personal property, the condition of the bond issued by the American Bonding Company was broken and that the American Bonding Company became liable to the state for said default, and that the National Surety Com-

pany is in no wise liable to the state of Ohio because said collateral inheritance tax was not paid, it being the duty of the executor to use the personal property for the payment of taxes before using any of the proceeds arising from the sale of real estate for such purposes. The National Surety Company, therefore, asks to be dismissed from this action.

To this answer and cross-petition of the National Surety Company the American Bonding Company filed its demurrer, for the reason that it does not set forth facts sufficient to constitute a cause of action against the defendant, the American Bonding Company.

The sole question in this case is whether the American Bonding Company alone or both surety companies, are liable for the default of the executor in not paying the collateral inheritance tax. On behalf of the National Surety Company it is contended that it is the duty of the executor to use the personal property of the estate for the payment of taxes, and that if he fails to do so and there is a default in this respect, the only surety that can be held for this default is the surety that was on the general administration bond. This claim is founded on Section 10714, General Code, providing for an order in which debts are to be paid.

This section reads:

"Every executor or administrator shall proceed with diligence to pay the debts of the deceased, applying the assets in the following order:

"1. The funeral expenses, those of the last sickness, and the expenses of administration.

"2. The allowance made to the widow and children for their support for twelve months;

"3. Debts entitled to a preference under the laws of the United States;

"4. Public rates and taxes, and sums due the state for duties on sales at auction;

"5. To every person who performed manual labor in the service of the deceased, before payment of the general creditors;

"6. Debts due all other persons."

It will be sufficient to state that this section merely fixes the priority of payments and designates the persons who are entitled to preferential payments. It does not follow that if the

executor does not make these payments from the funds in his possession at the time he has these funds, that this is a default of his and that his surety only is liable for such default. If the executor gets into his possession money from other sources than personal property, as for instance, proceeds from the sale of real estate, and commingles these proceeds with the money he derived from the personal estate, and then there is a default, both sureties will be liable.

This certainly must be true as far as taxes are concerned. The real estate which is held for the payment of debts or legacies may have a lien upon it for taxes, and if the proceeds .are not used for the payment of these taxes, there would. be such a default as is provided for in the bond; that is, the executor would not have accounted for all the moneys arising from such sale according to law, because one of the provisions of the statutes is that after the payment of the cost of the suit in which the proceeds are brought, the taxes must then first be paid.

However, it is not necessary to rest my opinion on this section of the General ·Code; nor to ascertain the duty of the executor in regard to the payment of the collateral inheritance tax. It is necessary to understand the nature of these taxes. It is well settled in Ohio, as elsewhere, that inheritance taxes are not a tax on property, but are a tax on the right to inherit. In *State* v. *Ferris,* 53 Ohio St., 314, it is held that an inheritance tax when properly understood is a tax on the right and privilege to inherit or to succeed to property. It is an excise tax and not a tax on the property 'received. In *Haggerty* v. *State,* 55 Ohio St., 613, the same view is taken in regard to the collateral inheritance tax; and in *State* v. *Guilbert,* 70 Ohio St., 229, the court approved the Ferris and Haggerty cases.

While it is true that the collateral inheritance tax under Section 5331, General Code, is made due and payable immediately after the death of the decedent, and at once becomes a lien upon the property and remains a lien until it is paid, nevertheless, this is merely for the security of the state. The administrator, executor or trustee under Section 5336, General Code, having in charge or trust property subject to such law, shall deduct the tax therefrom, or collect the tax thereon from the legatee, or persons entitled to the property. He shall not deliver any spe-

cific legacy or property subject to such tax to any person until he has collected the taxes thereon. So that in the end this collateral inheritance tax is paid out of the legacy and not out of the general estate of the decedent.

In the case at bar, the executor not having in his hands sufficient funds for the payment of all the legacies, was obliged to bring a suit to sell the real estate, and under the statute he was required to give bond, upon which the National Surety became his surety. One of the conditions of this bond as already referred to, reads that he shall faithfully make payment and account for all moneys arising from such sale according to law. One of the payments that the executor should have made was the payment of the collateral inheritance tax due from each legatee who received proceeds from the sale of this real estate. Therefore, it follows, that when the executor paid out the entire proceeds of this real estate without deducting therefrom the amount due the state of Ohio, on each respective legacy, there was a default for which his surety, the National Surety Company, would be liable.

It was contended at the argument that it was the duty of the executor to proceed immediately to have this collateral inheritance tax ascertained, and that because he failed to do so and did not use the money of the personal estate for that payment, that therefore the surety on the general administration bond was the only one liable.

While undoubtedly it was the duty of the executor to proceed immediately to ascertain this tax, nevertheless, as this tax, as stated above, is due on the right of succession and not on the right of property, this tax could not be ascertained until after the property was sold, for the reason that there might not have been sufficient property to pay the legacies. In that event, the state would only be entitled to receive a collateral inheritance tax on the amount actually paid to each legatee.

In *In re Gihon*, 169 N. Y., 443, 447, the court say:

"Therefore, though the administrator or executor, is required to pay the tax, he pays it out of the legacy for the legatee, not on account of the estate. The requirement of the statute that the executor or administrator shall make payment is prescribed to secure such payment, because the government is

unwilling to trust solely to the legatee.  No one questions that where a legacy is given for a specified amount the tax must be deducted from the amount of the legacy and the balance only given to the legatee.''

If no transfer is effected because it turns out that there is no property to transfer, no tax can be collected; and if the legatee renounces the gift and refuses to receive it, no tax can be collected with respect to him because there is no transfer to him.  The fact that the tax is payable at the death of the testator controls the question of interest, but certainly controls no other question germane to the point under consideration.

''A testator may direct that the tax on a particular legacy shall be paid out of his estate; nevertheless, in reality, the tax is still paid out of the legacy, the effect of the direction of the testator being merely to increase the amount of the legacy.''

In the case of *In re Wolf*, 89 App. Div., 349, affirmed, *In re Wolf*, 179 N. Y., 599, on the opinion below, it was held that where a legatee named in a will, subsequent to the death of the testator, and without intent to evade the transfer tax, renounces the legacy, which thereupon passes to another person under the residuary clause of the will, the legacy is not subject to a transfer tax calculated at the rate at which it would have been taxable if it had been actually accepted by the original legatee, but is taxable at the rate at which it would have been taxable, if it had been originally bequeathed as part of a residuary estate.  The transfer tax is upon the transfer or succession, and not upon the property or estate of the deceased.

See also *In re Zefita, Countess de Rohan-Chabot*, 167 N. Y., and *In re Phipps*, 77 Hun., 325, affirmed, *In re Phipps*, 143 N. Y., 641.

Therefore, inasmuch as the amount of the collateral inheritance tax could not have been ascertained until the amount of the legacy payable to each legatee was ascertained, and as the amount payable to each legatee under the will could not be ascertained until the property was sold for the payment of legacies, and as this property could not be sold without a bond being given, and as this bond was given with the National Surety Company as surety, the proceeds of the sale of the real estate, together with the proceeds of the personal estate, both

being necessary for the payment of the legacies, the collateral inheritance taxes due the state, which were ascertained after the sale of the real estate, and the executor neglecting to pay such taxes, made a default in that he did not properly account for both the proceeds of the personal estate and of those realized from the sale of the real estate, and therefore both bonds are liable for such default.

It was conceded on the argument that if both sureties should be found liable for the default of the executor, that they would be liable as co-sureties and in proportion to the respective amounts of their bonds. This was the ruling of the court in *Kehanst* v. *Daum,* 4 N. P., 366; 6 Dec., 401

The demurrer of the American Bonding Company to the answer and cross-petition of the National Surety Company will be sustained.