In the Matter of the Appraisal of the Estate of FREDERICK ROWLAND HAZARD, Deceased, under the Acts in Relation to Taxable Transfers of Property.

DORA G. S. HAZARD and Others, Individually and as Executors, etc., of FREDERICK ROWLAND HAZARD, Deceased, and Others, Appellants; EUGENE M. TRAVIS, Respondent.

Fourth Department, July 1, 1919.

Tax — transfer tax — Federal income tax not to be deducted in determining amount of State transfer tax — tax upon interest of testator in his father's estate.

The State Transfer Tax Law does not contemplate a deduction of the Federal income tax in determining the amount of the State transfer tax. Hence, executors are not entitled to deduct the amount of the Federal income tax fixed provisionally after the death of the testator from the value of his estate subject to the transfer tax.

In fixing the value of the estate of a testator for the purpose of assessing the transfer tax a percentage of the estate of the father of the testator to which he was entitled under his father's will, including a percentage of the income earned from the date of the death of the testator to the time when the estate of his father was distributed, may be included.

Since the transfer tax upon the testator's share of his father's estate did not accrue until the amount of his claim or chose in action was ascertained and made definite and certain upon the distribution of said estate, the tax should be assessed upon the amount then found to be his share.

APPEAL by Dora G. S. Hazard and others, individually and as executors, and others, from an order of the Surrogate's Court of the county of Onondaga, entered in the office of said Surrogate's Court on the 13th day of March, 1919, affirming a prior order entered upon the report of the transfer tax appraiser fixing the transfer tax in this estate.

*Nathan L. Miller,* for the appellants.

*George R. Fearon,* for the respondent.

HUBBS, J.:

Frederick Rowland Hazard, deceased, died a resident of Onondaga county, N. Y., on February 27, 1917. Thereafter, and on February 1, 1918, his executors filed a schedule of administration expenses in the Surrogate's Court of Onondaga

county, which included the following item: " Federal income tax *to be* paid on decedent's 1917 income, estimated about $19,000."

Thereafter, and on April 10, 1918, the executors filed an affidavit in the said court, which read, in part, as follows: " That the amount of that tax has now been definitely ascertained and reported to the United States Internal Revenue Collector, and the amount so reported to the United States Internal Revenue Collector is $10,698.68, and that is the amount which the executors of said estate will have to pay as an income tax on the income received by the decedent in the year 1917, prior to his death."

It will be noted from the above that the amount of the said income tax was not known or determined on February 1, 1918, when said schedule was filed.

The Federal income tax is assessed on the net earnings for the preceding calendar year. (Revenue Act of 1916 [39 U. S. Stat. at Large, 756, chap. 463], tit. 1, § 1, subd. a, approved Sept. 8, 1916, as amd. by Revenue Act of 1917, approved Oct. 3, 1917, 40 U. S. Stat. at Large, 300, chap. 63.)

The report for the calendar year 1917 was required to be filed on or before March 1, 1918. (39 U. S. Stat. at Large, 761, § 8, subd. b.) The tax for the calendar year 1917 would be assessed between March 1 and June 1, 1918, and would be payable on or before June 15, 1918. (39 U. S. Stat. at Large, 763, § 9, subd. a.)

At the time of the death of the said Frederick Rowland Hazard no income tax had been collected, assessed or reported upon the income which he had received during the year 1917 prior to his death. Regulation No. 33, governing the collection of the income tax under said act and the amendment promulgated January 2, 1918, provided by article 4, paragraph 23, as follows:

" Executors and administrators.— If the net income of a decedent from January 1 to the date of his death within that year was $1,000 or over, if unmarried, or $2,000 or over if married, a return for such decedent must be made by the executor or administrator."

The executors herein duly made a report of the income of the said decedent from January 1, 1917, to the time of his death on

February 27, 1917. On that report, the income tax for the period was assessed at $10,698.68 and was paid by the executors.

On or about January 6, 1919, the appraiser, in pursuance of the law in relation to taxable transfers of property in the State of New York, made and filed his report. Thereafter and on January 8, 1919, an order was made by the surrogate fixing and assessing the transfer tax. Thereafter an appeal was taken from said order to the Surrogate's Court, setting forth, as one of the grounds of the appeal, that it was error not to have allowed as a deduction the sum of $10,698.68, the income tax paid by the executors. The surrogate held that the sum so paid for the income tax should not be exempted from the State transfer tax and an order was made affirming the previous order, which fixed and assessed such transfer tax. From the decision so made an appeal was taken to this court.

The State's plan of taxation upon taxable transfers is contained in article 10 of the Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], as amd.). Section 220 of said chapter (as amd. by Laws of 1916, chap. 323)* provides upon what transfers of property a tax shall be imposed, the tax imposed to be upon the clear market value of such property. The transfer of the property left by the decedent is concededly within the act. Section 221 (as amd. by Laws of 1916, chap. 548)† contains a statement of the exceptions and limitations under said act.

It is the contention of the appellants that the sum of $10,698.68, paid by the executors for said income tax, should be deducted from the value of the property transferred because of the provisions of section 221 and the construction placed thereon by the courts. It is urged that the property left by said decedent came to the executors charged with the payment of said sum; that the transfer tax is based upon the transfer, which takes effect at the death of the testator, of the property then owned by him, subject, however, to the payment of his obligations; and that one of those obligations was the pay-

---

* Since amd. by Laws of 1919, chap. 626.— [REP.

† Since amd. by Laws of 1917, chap. 53, and Laws of 1918, chap. 111.— [REP.

Fourth Department, July, 1919.          [Vol. 188.

ment of the income tax upon the income which he had received during the year 1917 prior to his death. The surrogate has decided otherwise.

The contention of the respondent, the State Comptroller, is that the State Transfer Tax Law does not contemplate a deduction of the Federal income tax in determining the amount of the State transfer tax. That is the question for our determination.

In the case of *Magoun* v. *Illinois Trust & Savings Bank* (170 U. S. 283) it was said: " The right to take property by devise or descent is the creature of the law, and not a natural right — a privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the States may tax the privilege."

Our Court of Appeals has said: " The right to make a testamentary disposition of or the right to inherit property is not an inherent right; nor is it guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the Legislature as expressed in their enactments. It can withhold or grant the right, and, if it grants it, it may make its exercise and its extent subject to such burdens and requirements as it pleases." (*Matter of White*, 208 N. Y. 64.)

This State, by the Transfer Tax Law, has placed upon the privilege granted the burden of paying the transfer tax fixed by the statute. The tax is paid upon the privilege or right to receive the property and the privilege or right to dispose of it by will or by the intestate laws of the State. The tax is not upon the property itself, it is not based upon the amount which the transferee receives, but upon the " clear market value of such property " " at the time of the transfer," the death of the owner. (Tax Law, § 220, subd. 8, as amd. *supra;* Id. § 222.) The State appropriates to itself from the property which the decedent leaves at the moment of his death, the amount of the tax, and the property left does not belong to the legatees until the State has received therefrom its share, fixed by the statute. (*Matter of Penfold* [*Josephine*], 216 N. Y. 168; *United States* v. *Perkins*, 163 U. S. 625; *Matter of Sherman*, 179 App. Div. 497; affd., 222 N. Y. 540.)

Section 221 of said Tax Law, in the enumeration of exceptions and limitations, does not, by any express provision, pro-

vide for the deduction of a sum which may be paid from an estate for a Federal income tax upon an income received by the decedent before his death.   Certain expenses of administration may be deducted, however, as it has been held that the allowance of such expenses is necessarily implied from the language of the act.   But not all expenses or sums properly paid out by the executor are properly deductible as expenses of administration.   (*Matter of Sherman, supra.*)

In *Matter of Kennedy* (20 Misc. Rep. 531) it was held that a legacy tax paid in the State of Pennsylvania could not properly be deducted in fixing the value of an estate for the purpose of assessing a transfer tax in this State.   To the same effect is *Matter of Penfold* [*Josephine*] (81 Misc. Rep. 598).

In *Matter of Bierstadt* (178 App. Div. 836) it was held that the executors of an estate were not entitled to deduct from the gross estate, as an expense of administration, the tax to be paid under the Federal " Estate Tax Law " (39 U. S. Stat. at Large, 777, chap. 463, tit. 2, § 201 *et seq.*) before the amount of the transfer tax under the State law should be fixed.   To the same effect is *Matter of Sherman* (*supra*).

In *Matter of Freund* (143 App. Div. 335; affd., 202 N. Y. 556, on the opinion of MCLAUGHLIN, J.) it was held that where an assessment, for the purpose of taxation, had been made upon real property of a testator before his death, but the tax had not become a lien upon the property, the amount levied after the testator's death could not be deducted before the transfer tax was fixed.

Immediately upon the death of Frederick Rowland Hazard there was a prospective liability to the Federal government to pay an income tax on the income which he had received from January 1, 1917.   The amount had not been ascertained, it was uncertain and indefinite.   His executors made a return, upon that return an assessment was made and they paid the amount so assessed.   It is possible, however, that the amount of income tax so assessed and paid may be subject to material reduction.   Under the procedure followed by the Com missioner of Internal Revenue, upon receipt of a return, an assessment is made based thereon.   The return is then filed and in due course audited.   (Montgomery on Income Tax Procedure [1919 ed.], 143 *et seq.*)   Upon the audit, which may

be had within five years, it may appear that errors in computation, or otherwise, have resulted in the assessment of an excessive tax, in which event the excess paid, unless applicable to taxes then due, is to be refunded. (Revenue Act of 1918 [40 U. S. Stat. at Large, 1085], § 252, approved Feb. 24, 1919.) The Commissioner is authorized to make such refund. (Revenue Act of 1918 [40 U. S. Stat. at Large, 1145], § 1316, amdg. U. S. R. S. §§ 3220, 3225.) Within the same time the taxpayer may file a claim for refund and six years or more may elapse before determination of such claim. (Montgomery Income Tax Procedure [1919 ed.], 146 *et seq.*) Such claim may be made by the executor or administrator after the death of the taxpayer. (Treasury Department U. S. Int. Rev. Regulations, 1918, No. 33, ¶ 751.) Thus it appears that an income tax, because assessed and paid upon a return filed by a taxpayer, is not thereby finally determined.

Furthermore, the Federal income tax so paid was not due at the date of the death of the testator and did not become due until upwards of one year thereafter. The same was true in relation to the Federal estate tax under consideration in *Matter of Bierstadt* (99 Misc. Rep. 457; affd., 178 App. Div. 836) and the reasoning of Surrogate FOWLER as set forth in his opinion in that case is applicable here.

I do not think that the liability was such, at the time of the testator's death, as to entitle his executors to deduct the amount fixed provisionally after his death as the tax on his income from the value of his estate subject to a transfer tax.

The appellants also appeal from the provision of the order made by the surrogate which fixed the value of the estate of Frederick Rowland Hazard, deceased, as including the sum of $142,742.46, received by the executors of his estate from the executors of the estate of Rowland Hazard, deceased, that amount representing two-sevenths of the income of said last-mentioned estate earned from February 27, 1917, the date of the death of Frederick Rowland Hazard, to December 1, 1917, when the estate of Rowland Hazard was distributed.

Rowland Hazard was the father of Frederick Rowland Hazard. He died in 1899. It was provided in his will that Frederick Rowland Hazard should receive two-sevenths of his

estate. His estate was not distributed until December 1, 1917, nine months after the death of Frederick Rowland Hazard. On December 1, 1917, the parties interested in the estate of Rowland Hazard, by agreement, distributed that estate and there were delivered to the executors of the estate of Frederick Rowland Hazard stocks, cash, etc., of the agreed value, as of that date, of $2,025,675.87. Of said sum, $142,742.46 represented two-sevenths of the income of said estate of Rowland Hazard from February 27, 1917, the date of Frederick Rowland Hazard's death, to December 1, 1917, the date of distribution. It is contended by the appellants that such sum should not have been included in the value of the estate of Frederick Rowland Hazard upon which a transfer tax was assessed. It is urged that said testator was not seized or possessed of said property at the time of his death and that said property was not subject to a transfer tax under section 220 of the Transfer Tax Law; that said sum was not transferred at the time of the testator's death; that it was never a part of his estate but was income earned after his death and not subject to said tax.

In *Matter of Vassar* (127 N. Y. 1) it was held that the transfer tax should be assessed upon the fair market value of the estate at the time of the decedent's death, and not upon the fair market value at the time of decedent's death with all increase thereof up to the time of the final accounting of the executors. In that case the deceased died seized and possessed of the property taxed. In the case at bar, Frederick Rowland Hazard was not seized and possessed of the two-sevenths share of his father's estate to which he was entitled under his father's will. All that he had was a chose in action, a claim, against his father's estate for said two-sevenths share. It is clearly settled that his claim against his father's estate could not be fixed for the purpose of imposing a transfer tax on his estate until his father's estate had been distributed. (*Matter of Phipps,* 77 Hun, 325; affd., 143 N. Y. 641, on opinion below; *Matter of Chabot,* 44 App. Div. 340; affd., 167 N. Y. 280; *Matter of Clinch,* 99 App. Div. 298; affd., 180 N. Y. 300.)

If the transfer tax appraisal had been had before December 1, 1917, when the father's estate was distributed, it would have

been necessary to defer the assessment of the transfer tax on the share arising from the father's estate until such time as the amount thereof had been fixed and determined by a distribution thereof upon agreement of the parties in interest, or upon a judicial settlement of the accounts of the executors thereof.

In *Matter of Clinch* (99 App. Div. 302) the court said: " Of course, until there had been a settlement of the father's estate, it could not be definitely known there would be any transfer to tax, and until a distribution had been made nothing had been transferred and for that reason no tax could be imposed. Up to that time there was a mere claim on the part of Robert [the deceased legatee] or his executors against his father's executors, for a share or interest in [the father's] estate which passed by his will. Such claim was, at most, a mere chose in action * * *. But when an actual distribution had taken place that which theretofore was uncertain became certain and at that moment a tax attached to the transfer."

It seems clear that the transfer tax upon the testator's share of his father's estate did not accrue until the amount of the claim or chose in action was ascertained and made definite and certain upon the distribution of said estate on December 1, 1917. If it did not accrue until said date, it could not be assessed until then, and it would seem to follow that the tax should be assessed upon the amount then found to be the share of the testator in his father's estate. Until his share therein was settled and determined, the income on such share could not be fixed and determined. The testator's claim against his father's estate, at the time of his death and there-after until distributed, was subject to fluctuation. The value of his chose in action might increase or decrease. If the value of the estate should increase, the value of his chose in action would become greater. On the contrary, if the estate should decrease, the value of his chose in action would become less. If the estate, and accordingly his chose in action, had decreased in value before distribution, there would have been a decrease in the amount of the transfer tax. The estate and the chose in action having increased, as they did, the transfer tax would be increased. Such increase would not be in the value of something of which the testator died seized and possessed, but simply in the value of his chose in action.

In *Matter of Penfold* (*William*) (87 Misc. Rep. 525) Surrogate FOWLER, in speaking of a situation like the one in question here, said: " The securities which the decedent possessed at the date of his death were properly appraised at their value as of that date; but he did not possess any of the securities which were subsequently paid over to his executors by the executors of his sister's estate. He had an interest in his sister's estate, but he had no right to any particular stock or bond or other security constituting part of his sister's estate. His interest was a right to a share of the estate upon its distribution by the executors, but not a right to any particular stock, bond or other security of the estate. It was a chose in action, and until it had been reduced to possession its value could not be definitely ascertained. It is true that its value for the purpose of the transfer tax was the value of the chose in action at the date of decedent's death, but this value was not the value upon that date of the particular securities which were subsequently paid by the executors of the estate of Josephine Penfold to the executors of his estate. The appraiser ascertained the value of the chose in action to be the value of the securities on the date upon which they were paid to the executors of decedent's estate. I am inclined to think that this method of valuation results in substantial justice to the State as well as to the legatee. While a strict adherence to technical procedure might require a more elaborate and abstruse method of calculating the value of such chose in action, I am satisfied that the method adopted by the appraiser is substantially correct." This case was affirmed in the Appellate Division, First Department, on May 21, 1915 (not reported), and in the Court of Appeals in 216 New York, 171.

Of course, there could have been a judicial accounting in the estate of Rowland Hazard, deceased, as of February 28, 1917, and the value of his estate could thus have been fixed as of that date, and the value of the two-sevenths share of the testator could then have been determined as of that date. That was not done and the State Comptroller had nothing to say about the practice adopted in the settlement of that estate. The persons interested settled the matter by distributing the estate on December 1, 1917.

Under the facts in this case, I cannot see that there was any error in the method adopted in assessing the transfer tax and I advise that the order be affirmed, with costs.

All concurred.

Order affirmed, with costs.