In the Matter of the Appraisal for Taxation of the Estate of Augustus Whiting, Deceased.

1. TRANSFER TAX ACT—BONDS AND STOCKS OF DOMESTIC AND FOREIGN CORPORATIONS OWNED BY NON-RESIDENT DECEDENT, DEPOSITED IN THIS STATE. Bonds of foreign, as well as domestic corporations, and certificates of stock of domestic corporations (but not United States bonds or certificates of stock of foreign corporations), owned by a non-resident decedent, but deposited by him in a safe deposit vault in this state, and so present in this state at the time of the decedent's death, are subject to taxation under the Transfer Tax Act (Laws of 1892, chap. 399).

2. UNITED STATES BONDS. Bonds issued by the United States, although present in this state at the time of their owner's death, are not subject to taxation under the Transfer Tax Act of 1892. Although the state may have the power to impose a succession tax upon United States bonds, it has not yet done so.

*Matter of Whiting*, 2 App. Div. 590, modified.

(Argued April 21, 1896; decided October 6, 1896.)

APPEAL from order of the Appellate Division of the Supreme Court in the first judicial department, made February 14, 1896, which affirmed an order of the surrogate of the county of New York affirming an appraisal of property under the Transfer Tax Act (Chap. 399, Laws of 1892).

The facts, so far as material, are stated in the opinions.

*George L. Rives* for executors and trustees, appellants. A debt cannot be regarded as property in a state in which neither the debtor nor the creditor resides. (*People ex rel. v. Comrs. of Taxes*, 23 N. Y. 224; *People v. Trustees of Ogdensburgh*, 48 N. Y. 390; *People ex rel. Jefferson v. Smith*, 88 N. Y. 576; *People ex rel. Darrow v. Coleman*, 119 N. Y. 137; *People ex rel. Day v. Barker*, 135 N. Y. 656; *People ex rel. E. El. L. Co. v. Campbell*, 138 N. Y. 543; *Kirtland v. Hotchkiss*, 100 U. S. 491; 1 Desty on Taxn. 64, 326; *Johnson v. City Council*, 3 Oreg. 13; *Bates v. N. O., J. & G. N. R. Co.*, 4 Abb. Pr. 72; Story's Conflict of Laws, §§ 362, 399; *Tingley v. Bateman*, 10 Mass. 343; *Douglass v. P. Ins. Co.*, 138 N. Y. 209.) Recent statutes have

not changed the rule. (*N. C. R. Co.* v. *Jackson*, 7 Wall. 262; *Foreign Held Bonds Case*, 15 Wall. 300; *In re Swift*, 137 N. Y. 77; *In re Enston*, 113 N. Y. 174; *People ex rel. Darrow* v. *Coleman*, 119 N. Y. 137; *In re Hoffman*, 143 N. Y. 327; Laws of 1892, chap. 677, § 4.) Bonds of the United States are bonds of a foreign corporation. (*In re Merriam*, 141 N. Y. 479; *Orcutt's Appeal*, 97 Penn. St. 179.) The state has no power to impose a legacy or succession tax in respect of bonds of the United States owned by a non-resident. (*Strode* v. *Commonwealth*, 52 Penn. St. 181; *In re Swift*, 137 N. Y. 77; *In re Merriam*, 141 N. Y. 479; *In re Hoffman*, 143 N. Y. 327; *H. Ins. Co.* v. *New York*, 134 U. S. 594; *M'Culloch* v. *Maryland*, 4 Wheat. 316; *Weston* v. *Charleston*, 2 Pet. 460; *Bank of Commerce* v. *New York*, 2 Black, 620; *Bank Tax Case*, 2 Wall. 200; 7 Wall. 16, 26; *Nat. Bank* v. *Commonwealth*, 9 Wall. 353; *Palmer* v. *McMahon*, 133 U. S. 660.)

*Emmet R. Olcott, Jabish Holmes, Jr.*, and *Edgar J. Levey* for the comptroller of the city of New York, respondent. The tax imposed by chapter 399 of the Laws of 1892 upon the succession by will or intestate law to property of a non-resident applies to all property over which the state of New York possesses any jurisdiction for the purposes of taxation. (Laws of 1892, chap. 399, §§ 1, 22.) The state of New York possesses jurisdiction for purposes of taxation over bonds of foreign corporations actually within the state, regardless of the domicile of the owner, such bonds being in themselves "property" and being capable of having a *situs* of their own, away from the domicile of their owner. (Burroughs on Taxn. §§ 6, 50; Cooley on Taxn. [2d ed.] 21; 1 R. S. chap. 13, tit. 1; Laws of 1892, chap. 677, § 4; *People ex rel. Jefferson* v. *Smith*, 88 N. Y. 585; *Beers* v. *Shannon*, 73 N. Y. 299; *People* v. *Trustees of Ogdensburgh*, 48 N. Y. 390; *Von Hesse* v. *Mackaye*, 55 Hun, 368; 121 N. Y. 694; *People ex rel. E. El. L. Co.* v. *Campbell*, 138 N. Y. 547; Code Civ. Proc. §§ 648,

649, 658, 2478; *People ex rel. Day* v. *Barker*, 135 N. Y. 656; *In re Romaine*, 127 N. Y. 80; *Foreign Bond Tax Cases*, 15 Wall. 300; *Plimpton* v. *Bigelow*, 93 N. Y. 592.) The value of the United States bonds was properly included in determining the amount of the tax. (*Strode* v. *Commonwealth*, 52 Penn. St. 181; *Wallace* v. *Myers*, 38 Fed. Rep. 184; *In re Swift*, 137 N. Y. 77; *In re Merriam*, 141 N. Y. 479; *In re Hoffman*, 143 N. Y. 329; *In re Cullum*, 145 N. Y. 593; *People* v. *H. Ins. Co.*, 92 N. Y. 328; 134 U. S. 598; *Society* v. *Coile*, 6 Wall. 594; *Prov. Institution* v. *Massachusetts*, 6 Wall. 631; *Mager* v. *Grima*, 8 How. [U. S.] 490.)

VANN, J.  Augustus Whiting, a resident of Newport, Rhode Island, died there on the 23rd of July, 1894, leaving a will by which he gave his entire estate in trust for his infant daughter.  At the time of his death he had money on deposit in a bank in this state, and owned certain bonds and certificates of stock that were found in a box rented by him in a safe deposit vault in this state.  The stocks and bonds were issued partly by domestic and partly by foreign corporations; and there were also bonds of the United States to the amount of $52,545.  All except the stock of foreign corporations were included in the appraisement, which was sustained by the surrogate and by the Appellate Division.  The theory upon which the Supreme Court, by a divided vote, proceeded to judgment, was that the written instruments were physically within the state and constituted property here subject to taxation.  They were regarded as tangible and apparently as in the nature of chattels.  I think this is a sound conclusion, warranted by the *Romaine* case, which was decided before the act "to tax gifts, legacies and collateral inheritances" was expanded into the present statute "in relation to the taxable transfers of property." (*In re Romaine*, 127 N. Y. 80; L. 1887, ch. 713; L. 1892, ch. 399.)

I think, moreover, that the written instruments issued by domestic corporations, including their bonds and the interests represented by them, are subject to a succession tax, inde-

pendent of the fact of their physical presence in this state, as I have already attempted to show in an opinion filed in the *Bronson* case, argued and decided at the same time as the case in hand.

This involves the conclusion that the legislature intended to tax the investment itself when practicable, otherwise the evidence of the investment, in the form of a certificate, when that is habitually kept in this state. The law clearly distinguishes "written instruments themselves" from "the rights or interests to which they relate" (L. 1892, ch. 677, §§ 1, 4, 32), and makes either taxable. The main use of certificates is for convenience of transfer, and they are treated by business men as property for all practical purposes. They are sold in the market, transferred as collateral security to loans, and are used in various ways as property. They pass by delivery from hand to hand, are the subject of larceny, and are taxable generally when in possession of an agent in this state. They are the only evidence of transfer required by the corporations issuing them in order to make the actual transfer on the books. There is obvious propriety in subjecting the instrument of transfer to a transfer tax when it is left in this state for safekeeping. It is subject to the jurisdiction of our laws, and hence is within the intent of the Transfer Tax Act. When the design of the legislature is to tax the transfer of everything that it has power to tax, there is no inconsistency in taxing in one form if another is not available. Indeed, perfect consistency is not always practicable in a scheme of taxation that is intended to let nothing escape that can be owned or transferred. Thus the legislature intended, as I think, to repeal the maxim *mobilia personam sequuntur*, so far as it was an obstacle, and to leave it unchanged, so far as it was an aid, to the imposition of a transfer tax upon all property in any respect subject to the laws of this state. I think this intention plainly appears from the history of legislation upon the subject, the decisions of the courts, some of them in effect repealed, and from the sweeping language of the statute, which subjects everything that can be owned in this state to a

succession tax, except so far as expressly exempted. The legislature possessed and exercised the power to employ the maxim when necessary, and to disregard it when necessary to attain that object. That dominant purpose is the key to the construction of the act, and it should not be thwarted by the conservatism of the courts, even if, in order to embrace all kinds of property, it is necessary to make it so pliable in application as to conform to all methods of doing business and all ways of holding property.

A majority of my associates, however, are of the opinion that the United States bonds, although physically present in this state, are not subject to a transfer tax. By their direction I announce, as the conclusion of the court, that the certificates of stock in question, as well as all of the bonds, except those issued by the United States, were properly held by the courts below subject to taxation under the Transfer Tax Act on account of their physical presence in this state; that, although the state may have the power to impose a succession tax upon United States bonds, it has not yet done so; that the phrase "property * * * over which this state has any jurisdiction for the purposes of taxation" refers to the jurisdiction actually exercised through contemporary statutes, rather than to the entire jurisdiction actually possessed by the state; that hence the order appealed from should be so modified as to exempt from taxation the bonds owned by the decedent that were issued by the United States, and, as thus modified, affirmed, without costs in this court to either party.

GRAY, J. (dissenting). I cannot concur in the opinion that the bonds of foreign corporations, which formed a part of the non-resident decedent's estate, were subject to appraisal for taxation purposes under the "Transfer Tax Act," because they happened to be, at the time of his decease, deposited within this state. Holding, as we do, and must, in conformity with authority and reason, that the property represented by the bonds is the debt which follows the creditor's person, I am unable to perceive how they can be dissociated from that

indebtedness.   Nor do I perceive any good reason for taking
a view which permits of double taxation.   The claim for the
comptroller is that, both by the terms of the act and by force
of the Statutory Construction Law of the state (Chap. 677,
Laws of 1892, § 4), these bonds could have a *situs* here,
where found at their owner's death.   The argument is that,
inasmuch as personal property is defined to include written
instruments by which any debt or official obligation is created,
or evidenced, bonds are expressly made property of a tangible
nature, having a *situs* where physically present.   There are,
however, several considerations which militate strongly against
our reading into the "Transfer Tax Act" the provision of the
general Statutory Construction Act.   In the first place, it was
passed prior to the Statutory Construction Act, and, itself,
gave a definition to the word "property" as used in the act,
which ought to control; especially so, as it permits of a con-
struction which is consistent with rules of law and with a
greater dignity of purpose on the part of the state in its
efforts to raise revenue.   In the second place, we should not
assume that the legislature had any intention, through the
Statutory Construction Act, to change a settled rule of law,
which regards the debt as the creditor's property, having
its *situs* at his domicile.   And nothing seems to compel
such an assumption with respect to an act, which contains
within itself a complete system for the taxation of trans-
fers of property, in cases of testacy and of intestacy.
Why shall we unnecessarily impute to the legislative body
an intention to include for the purpose of this tax that which
is only the evidence of property, when the property itself
is beyond the reach of state laws?   I think such a construc-
tion to be unreasonable and oppressive.   We cannot afford,
however desirable it may be to increase the revenues of the
state at the least sacrifice of its inhabitants, to put a construc-
tion upon its laws, which will make them appear to be unwise,
if not unconscionable.   Mr. Justice PATTERSON, who spoke
for the majority of the members of the Appellate Division in
this case, in his able opinion, amply conceded that the bonds,

as evidences of indebtedness, could have no *situs* different from the domicile of their owner and clearly showed that to be an incontrovertible proposition, borne out by cases in the United States Supreme Court and in this court. In the *Enston Case* (113 N. Y., at p. 181), Andrews, J., speaking of bonds of foreign corporations, which were owned by a non-resident decedent, but were in the hands of her agent within the state, said: " They were not, in a legal sense, property within this state, and they were not, under the general laws or the policy of the state, taxable here. On the contrary, they were, by the general policy of the state, exempted from taxation here."

It is unnecessary to review the authorities upon the evident proposition that these bonds could have no *situs* different from the domicile of their owner. In the *Bronson* case, I had occasion to express views which I shall not repeat here. It seems to me that the policy of the law is satisfied, when it has reached for taxation purposes those many and varied objects of possession, which have a tangible and visible existence, and, in the words of Judge Comstock, in the *Hoyt Case* (23 N. Y., at p. 240), " are capable of a *situs* away from the owner or his domicile." That the bonds and obligations of a foreign corporation held by a non-resident, but happening to be in this state, might be included by the legislature for taxation purposes — that it may ignore their legal existence elsewhere — I need not now deny ; but, without some clear warrant in the terms of the law, is any wise policy subserved by construing language, certainly admitting of a doubt, in such wise as to justify state officers in assessing the paper evidence of the indebtedness, in order to exact the tribute of a tax ? If depositories and depositaries in this state are availed of by a non-resident for the temporary custody of his bonds, can it be said that he has placed his property in the debt within the dominion of this state? Clearly not. The bond is not property as distinguished from the debt it evidences. It may be destroyed and the creditor loses no right to recover the debt..

The state has no jurisdiction over a right of succession which accrues under the laws of the foreign state. That is something in which this state has no interest, and with which it is not concerned. The legal title to these bonds vested in the personal representatives of the decedent by force of foreign laws, and we have held that an executor's title will be recognized by the laws of this state without any grant of letters by its courts. (*Toronto Gen. Trust Co.* v. *C., B. & Q. R. R. Co.*, 123 N. Y. 45.) As before suggested, when the state undertakes to reach those objects of property of the non-resident decedent, which have a tangible and visible existence within this state, and imposes a tax upon the right to succeed to their ownership, its right to do so is not without support in reason and authority. For it to undertake to collect from the estate of a non-resident decedent a tax based upon and measured by such possessions as the bonds of foreign corporations, which happen, at the time of his death, to be within this state, may be justified upon the principle that might is right, but not, in my opinion, by sound public policy.

There is a reasonable basis for taxing the transfer by will, or under the intestate laws, of the personal estate of the resident decedent, whether within or without the state. Being subject to its jurisdiction, and having had the privileges and protection of its laws in the accumulation and enjoyment of his property, the exertion of the legislative authority, in imposing a tax on the right to the succession of whatever composed the personal estate and constituted the wealth of the resident within its borders, rests upon some appreciable legal principle. If the claim of the comptroller is upheld, I cannot but regard it, to use Mr. Justice FIELD's language in the *Foreign Held Bonds Case* (15 Wall. 300), as, "in fact, a forced contribution levied upon property held in other states, where it is subjected, or may be subjected, to taxation upon an estimate of its full value."

Is it at all necessary, for the purposes of justice, that the legal *situs* of such property, as is now in question, should be deemed other than at its owner's domicile? If so, I am unable to

perceive it, and I do not think that the court should commit the state to any policy that is not justifiable in the law and based upon the highest principles of government.

I think that the order appealed from should be reversed.

O'BRIEN, J., concurs with VANN, J.; ANDREWS, Ch. J., BARTLETT and MARTIN, JJ., concur in result of opinion of VANN, J.; HAIGHT, J., concurs with GRAY, J.

Ordered accordingly.