In the Matter of the Appraisal under the Act in Relation to Taxable Transfers of Property of the Property of George M. Pullman, Deceased.

Florence Lowden and Others, Beneficiaries under the Will of George M. Pullman, Deceased, Appellants; William J. Morgan, as Comptroller of the State of New York, Respondent.

*Transfer tax — on stocks and bonds of a New York corporation owned at his death by a non-resident — when no deduction is made for his debts, secured by pledge, owing to New York creditors — the pledged securities are not taxable.*

Stocks and bonds of corporations, organized under the laws of the State of New York, owned by a non-resident of that State, but actually located therein, are on his decease subject to a transfer tax in the State of New York although ancillary letters have not been taken out in that State.

In assessing such property for the purpose of the tax, no deduction should be made for debts of the decedent due to residents of the State of New York and secured in part by a pledge of bonds actually located in New York, and in part by a pledge of stocks of corporations organized under the laws of States other than the State of New York, where it appears that the value of the pledged securities is greater than the indebtedness and the assets of the estate are five times in excess of the liabilities.

The stocks and bonds of the New York corporations pledged as security for the debts are not taxable, as the title to them is in the pledgee whose security should not be impaired.

Van Brunt, P. J., dissented.

Appeal by Florence Lowden and others, beneficiaries under the will of George M. Pullman, deceased, from an order of the Surrogate's Court of New York county, bearing date the 19th day of September, 1899, and entered in said Surrogate's Court, affirming an order dated the 28th day of August, 1899, which appraised and fixed the transfer tax upon certain personal property of George M. Pullman, located in the State of New York.

*Howard Mansfield,* for the appellants.

*James M. Hunt,* for the respondent.

Patterson, J. :

The principal question arising on these appeals relates to the right of the proper authorities of the State of New York to determine and fix the amount of a tax, under the Transfer Tax Law

(Laws of 1896, chap. 908, §§ 220–242) of the State, on certain property situate within the State and which, at the time of his death, belonged to George M. Pullman, a resident of the State of Illinois. The application to have the property assessed and the amount of tax determined was made by the comptroller of the city of New York under the direction of the Comptroller of the State of New York, and it was made to appear to the surrogate by petition that Mr. Pullman died in the city of Chicago in October, 1897, leaving a will which was admitted to probate on October 27, 1897, in Cook county, Ill. The executors named in that will qualified. There is nothing in the record to show that ancillary letters have been applied for or taken out within the State of New York. The decedent's estate was solvent, the assets being five times in excess of the liabilities. At the time of his death, Mr. Pullman was the owner of bonds and stocks actually within the State of New York, such bonds and stocks being of corporations organized under the laws of the State of New York, and he also had on deposit in a trust company in the city of New York a large sum of money, and was possessed of certain other personal property situate in New York having a market value of several thousand dollars, the aggregate value of all this property being about the sum of $774,000. At the time of his death Mr. Pullman was indebted to various persons and corporations in the State of New York, and doing business in the city of New York, in the sum of something over $800,000. That indebtedness was secured by a pledge of bonds actually located within the State and having a market value of about $26,000, and partly by a pledge of capital stock of various corporations incorporated under the laws of States other than the State of New York, the market value of such stocks being in excess of the amount of the whole indebtedness. The appraiser appointed by the surrogate made an original report in which he found that for the purposes of taxation under the Transfer Tax Law the testator's personal estate within the State of New York amounted to $744,191.66, from which should be deducted the expenses of administration and the executors' commissions and debts to the amount of $58,430, that being the value of the bonds and of the stock of New York corporations pledged as collateral security to the creditors in the city of New York.

The first report of the appraiser was not approved by the surro-

gate, who held that the $58,430 of securities was also taxable. That report was returned to the appraiser, who made a subsequent report in which he included that amount in the taxable value of the property, and that report was confirmed by the surrogate. A tax was declared on a certain proportion of the aggregate ascertained value and not upon another portion thereof, for the reason that it could not then be presently ascertained in whom such other portion would ultimately vest, there being life estates and remainder created with respect to such other portion. Helen P. West and Emma P. Fluhrer, sisters of the decedent, for whom certain provisions were made under the will, and Florence Lowden and Harriet Carolan, daughters of the decedent and his residuary legatees, appeared before the surrogate and objected to the imposition of the tax, and they now appeal from the order of the surrogate and ask for a reversal of that order upon three specific grounds, which are stated as follows: *First*, that inasmuch as the decedent, at the time of his death, was indebted to local creditors to an amount greater than the ascertained market value of the local assets, there was no property of the decedent within the State of New York subject to a transfer tax under the act. *Second*, that under the laws and policy of the State of New York, all of the local assets of the decedent were absolutely subject to and primarily liable for the payment of the indebtedness to local creditors to the entire extent of such property. *Third*, that the local assets to the amount of $58,430, specifically pledged as collateral security for the payment of the indebtedness to local creditors, were liable to be entirely used for the purposes of such payment.

The argument of the learned counsel for the appellants proceeds upon the assumption that the indebtedness of Mr. Pullman to creditors in New York is to be considered from the point of view of the locality of that indebtedness, and that inasmuch as such debts are in excess of the market value of the taxable assets situate in this State, there was no property actually in the State which would pass under the will to any beneficiary in accordance with the terms and interpretation of the Transfer Tax Law. It is claimed that, under the provisions of that law and the decisions of the courts of this State, debts are to be offset against assets in ascertaining what property of a decedent is liable to the transfer tax. Where the whole estate is within the State of New York and the decedent is a resi-

dent of the State, undoubtedly debts are to be deducted from the value of the property. " They are charges which qualify the estate and are first to be paid before there can be any distribution of the personal estate to legatees or next of kin.   *   *   *   The real interest passing is what remains after payment of debts and other charges." (*Matter of Westurn*, 152 N. Y. 93.)

But, in this case, the indebtedness to the creditors in New York is a general indebtedness. It appears by the affidavit of one of the executors that that indebtedness is payable on demand. It is an indebtedness against the whole estate, and not, irrespective of the question of pledge, one for which any particular assets, no matter where situated, would be liable. The question presented is a practical one and not to be decided upon any mere theory or assumption that local creditors with security in their hands, on the failure of the foreign executors to pay the debts, will relinquish the security and look to what are called local assets for the payment of their claims in the general course of administration under ancillary letters to be issued hereafter in this State. The situation is simply this : There is taxable property of a non-resident decedent in this State for the shares and bonds are subject to taxation. (*Matter of Bronson*, 150 N. Y. 1.) *Prima facie*, there is a tax due and payable to the State of New York, and the State has a lien upon the property until the tax is paid. (Laws of 1892, chap. 399, § 3, re-enacted by Laws of 1896, chap. 908, § 222.)

The surrogate had authority to appoint an appraiser and to fix the tax. (*Matter of Westurn*, 152 N. Y. 93.) There is nothing before the court to show that any claims of creditors will ever be presented, but, on the contrary, the presumption is that the creditors in New York will pursue the ordinary course of making their demands upon the foreign executors, and in the event of the debts not being paid, resort to the securities they hold. It is true that such collateral securities are not a primary fund for the payment of their debts, and it is also true that an ancillary administrator with the will annexed would be under an obligation to pay domestic creditors before he remitted the assets here to the foreign executors, if such creditors presented their claims for payment. But the provisions of the law respecting the application of assets within

the jurisdiction to the payment of domestic creditors are made for the protection of those creditors. There is nothing in this record to show that ancillary administration ever will be taken or required or that creditors need protection. The contention of the appellants involves the proposition that these creditors, amply secured, would either abandon or surrender or put aside their security and look for the payment of demand debts in the slow process of administration of the estate in New York. If the personal property here, taxable under the law of this State, is to be held exempt because of the mere existence of these local debts, secured as they are, then it is obvious that the statute may be successfully evaded.

We think the conclusion reached by the learned surrogate was right and that where domestic creditors have in their hands the legal title and the right to resort for the payment of their debts to securities belonging to a non-resident decedent which are not taxable under the laws of this State, the indebtedness due such creditors is not to be offset against the value of property of such decedent otherwise taxable under the Transfer Tax Law of the State. The question raised by the appellants West and Fluhrer as to their specific legacies is disposed of adversely to their contention by what was decided in *The Matter of Hoffman* (143 N. Y. 327). But as to the $58,430 of bonds and stocks of domestic corporations held in pledge we think the order is incorrect. These securities are liable to be resorted to by the creditors. In pledge the title to them is in the pledgee and they are not in a situation to be taxed now as property of the estate of Mr. Pullman. All of their amount may be required to pay the debts to which these bonds and stocks are collateral and the creditors' security should not be diminished at this time.

The order appealed from should be modified by deducting the $58,430 from the assessment, and as modified affirmed, without costs to either party.

O'BRIEN, INGRAHAM and McLAUGHLIN, JJ., concurred; VAN BRUNT, P. J., dissented.

VAN BRUNT, P. J. (dissenting):

I dissent from the conclusion arrived at by Mr. Justice PATTERSON. I am of the opinion that the question is to be considered as though ancillary testamentary letters had been taken out. If such

were the case there is no doubt but that the executor would not only have the right, but it would be his duty, to apply the money in bank to the payment of the debts rather than allow the creditor to resort to the collaterals held by him, and I can see no reason why such an executor could not in the course of administration determine which and what securities should be sold to pay debts in case the cash on hand was not sufficient for the purpose. He could certainly not be compelled to resort to a particular security because it was not subject to taxation. It seems to me that we must assume that he would pursue that course of administration which would be the least burdensome to the estate, and that would be, all other things being equal, to apply taxable securities for the payment of debts and retain the others for distribution.

Order modified as directed in opinion, and as modified affirmed, without costs.

---

Thomas McKay, Respondent, v. The City of New York and Others, Respondents; Eleventh Ward Bank, Appellant. And Three Other Similar Actions Consolidated with this Action.

*Mechanics' liens in New York city — the Consolidation Act and not the General Lien Law controls — an assignment by the contractor has preference over a lien subsequently filed — the contract provision against liens, etc., protects the city only.*

The provisions of the Consolidation Act (Laws of 1882, chap. 410) relating to mechanics' liens filed on account of public improvements in the city of New York, were not repealed by section 5 of the General Lien Law of 1897 (Chap. 418), which also relates to liens under contracts for public improvements; and this view is strengthened by the fact that the Legislature by chapter 195 of the Laws of 1899 expressly repealed the provisions of the Consolidation Act on that subject.

Under such provisions of the Consolidation Act an assignment of moneys due under a contract for the erection of a public school in the city of New York, executed in consideration of moneys advanced by the assignee to the contractor to enable him to carry out the contract (a notice of which is filed with the comptroller of the city of New York), takes precedence over mechanics' liens subsequently filed against such moneys.

A provision in the contract that the contractor will not permit liens, attachments or other incumbrances to remain on the property, is intended for the protection of the city and not for that of persons claiming under the contractor.

Ingraham, J., dissented.