## In re AMES' ESTATE.

(Surrogate's Court, New York County.   April 25, 1913.)

1. TAXATION (§ 867*)—TRANSFER TAXES—BOND.
    Bonds of a foreign company, owned by a nonresident, are subject to transfer taxes when within the local jurisdiction.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1681–1684; Dec. Dig. § 867.*]

2. TAXATION (§ 867*)—TRANSFER TAXES—CORPORATE STOCKS.
    Stock of a domestic corporation, owned by a nonresident, though outside the jurisdiction, is subject to the transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1681–1684; Dec. Dig. § 867.*]

3. TAXATION (§ 867*)—TRANSFER TAX—CORPORATE STOCK.
    Shares of stock of a foreign corporation, pledged by a nonresident to domestic creditors, are not subject to transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1681–1684; Dec. Dig. § 867.*]

4. TAXATION (§ 867*)—TRANSFER TAX—SECURITIES PLEDGED AS COLLATERAL.
    A nonresident pledged stocks and bonds of foreign corporations as security for loans made by domestic creditors, and also pledged stock of a domestic corporation as security for loans made by nonresident creditors. *Held* that, none of the loans having been called prior to his death, the property interest transferred by death is merely a right of redemption by the nonresident's representatives, and is not a right to the stock, and therefore it has its situs at the nonresident's domicile, and is not subject to a domestic transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1681–1684; Dec. Dig. § 867.*]

5. TAXATION (§ 867*)—TRANSFER TAXES—DEBTS.
    Where a nonresident borrowed money, giving collateral security therefor, and the loans were not called before his death, such loans were not indebtedness within the state which might be deducted from assets located therein, for the purpose of computing the transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1681–1684; Dec. Dig. § 867.*]

In the matter of the estate of Oliver Ames, deceased.   From an order fixing the transfer tax, an appeal was taken by the State Comptroller and the executors of the estate.   Order reversed.

Arthur O. Townsend, of New York City, for Ames' Estate.
Thomas E. Rush, of New York City, for State Comptroller.

FOWLER, S.   An appeal from the order fixing tax has been taken by the state comptroller and by the executors of decedent's estate. The decedent, who was a resident of Massachusetts, died on the 22d day of October, 1895.   Prior to his death he had borrowed from residents of this state certain sums of money aggregating $1,000,000, and he had pledged for the payment of that sum certain bonds and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stock of foreign corporations. The bonds were pledged with the Mercantile Trust Company of New York, from which the decedent had borrowed $100,000. They constituted a part of the collateral given by the decedent to secure the payment of the sum borrowed by him from the trust company; the remainder of the collateral consisting of shares of stock of the American Sugar Refining Company, a foreign corporation. The collateral security given by the decedent for the remaining $900,000, borrowed from residents of this state, consisted of the stock of foreign corporations. The decedent had borrowed the sum of $600,-000 from residents of Massachusetts, and had pledged as part of the security therefor 2,435 shares of the preferred and 3,935 shares of the common stock of the General Electric Company, a New York corporation. The remainder of the collateral security for this loan consisted of shares of stock of foreign corporations.

The transfer tax appraiser, designated to appraise the estate for the purpose of the tax in this state, added the value of the bonds at the date of decedent's death to the value of the shares of stock of the American Sugar Refining Company hypothecated as security for the payment of the loan to the Mercantile Trust Company, then deducted the amount of the loan, and reported the taxable value of decedent's interest in the bonds as being the proportion of the balance which the value of the bonds bore to the value of the entire collateral. This amount he found to be $26,300. In ascertaining the value of decedent's interest in the shares of the General Electric Company pledged for the payment of the loans made to decedent by residents of Massachusetts, the appraiser added the value of these shares of stock to the value of the stock of the foreign corporations also pledged for the payment of the loans, and deducted from the sum the entire amount of the loans. The balance, or equity, he found to be $76,596, and the proportion of this which the value of the General Electric Company shares bore to the entire value of the pledged securities, viz., $31,658.-82, he reported as the taxable value of decedent's interest in the shares of the General Electric Company hypothecated with the foreign creditors. In addition to the shares of the General Electric Company stock hypothecated with the foreign creditors, the decedent at the time of his death owned 264 shares of the preferred and 619 shares of the common stock of the company. The value of these shares was added to the value of decedent's interest in the pledged securities, and the sum, less commissions and expenses of administration, was reported as the taxable value of decedent's estate in this state.

The executors contend that the entire indebtedness of the decedent to New York creditors should be deducted from the value of his holdings of stock in New York corporations, without taking into consideration the shares of stock of the foreign corporations pledged as security for the payment of the loans. The state comptroller contends that the appraiser was correct in his treatment of the debts and assets in this state, but that he should have deducted each of the loans made by the foreign creditors from the entire value of the security pledged for its payment, and reported as taxable that proportion of the surplus which

the value of the New York securities bore to the entire value of the collateral for each loan.

[1, 2] If the bonds had not been pledged with the Mercantile Trust Company to secure payment of the loan made to the decedent, they would be subject to a transfer tax as part of his estate in this state (Matter of Whiting, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. Rep. 640), while the decedent's holdings of stock in the General Electric Company would also be subject to a tax if they had not been hypothecated (Matter of Bronson, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632; Matter of Palmer, 183 N. Y. 238, 76 N. E. 16).

[3, 4] The shares of stock of foreign corporations pledged with the New York creditors are not subject to a tax. Matter of Whiting, supra. In the Matter of Pullman, 46 App. Div. 574, 62 N. Y. Supp. 395, it was held that where domestic creditors have in their hands the legal title as well as the right to resort for the payment of their debts to securities belonging to a nonresident decedent which were not taxable under the laws of this state, the indebtedness due to such creditors is not to be offset against the value of the property of such decedent otherwise taxable under the Transfer Tax Law (Consol. Laws 1909, c. 60, §§ 220–245) of this state. This decision is authority for the proposition that the shares of stock of the General Electric Company held by the decedent, and which were not pledged for the payment of any indebtedness, should not be applied by the appraiser in satisfaction of the loans made to the decedent by residents of this state and for which other property of the decedent had been pledged. In the Matter of Bennett, Surr. Decs. 1906, p. 620, affirmed without opinion in 120 App. Div. 904, 105 N. Y. Supp. 1107, the decedent owed a New York creditor $36,000, for which she had pledged as security certain stocks and bonds of New York corporations and foreign corporations. The executors paid the $36,000 out of unpledged New York assets, and the surrogate held that for the purpose of the transfer tax the appraiser should deduct this indebtedness from the value of the New York assets, and that the value of the taxable assets released by the payment of the indebtedness should be added to the balance of the unpledged assets in this state.

In the matter under consideration there is no proof that the loans made to the decedent by residents of this state were paid by the foreign executors, nor that the unpledged New York assets were used in satisfying any part of the secured indebtedness of the decedent. Therefore the decision in the Matter of Bennett is not controlling in this case. In the Matter of Grosvenor, 124 App. Div. 331, 108 N. Y. Supp. 926, affirmed 193 N. Y. 652, 86 N. E. 1124, the decedent owed New York creditors $111,188, and of this amount only $32,000 was alleged to be secured by collateral. The nature of the collateral is not stated. The appraiser deducted from the assets in this state that proportion of the indebtedness of the decedent to residents of this state which the assets in New York bore to the entire assets of the estate. Prior to the filing of the appraiser's report the indebtedness of the decedent

to New York creditors had been paid by the executors from the proceeds of the sale of stock of foreign corporations. The court held that the entire indebtedness of the decedent to New York creditors should be deducted from the New York assets. This decision is authority for the proposition that the entire indebtedness of a nonresident decedent to residents of this state should be deducted from his assets in this state. It does not, however, decide that bonds or the stock of a domestic corporation, when forming a part of the collateral security given by a nonresident to secure payment of a loan made to him by a resident of this state, should be applied by the appraiser in satisfaction of such loan to the exclusion of the nontaxable securities, and so as to release such securities.

It would appear, therefore, that neither of the cases cited is a controlling authority for the disposition of the questions raised by the appellants in this matter. The transfer tax is imposed, not upon the property, but upon the transfer of the property (Matter of Vanderbilt, 172 N. Y. 69, 64 N. E. 782), and it accrues immediately upon the death of the decedent (Matter of Sloane, 154 N. Y. 109, 47 N. E. 978). Therefore what is subject to a tax is the transfer of the value of decedent's interest in the property at the date of death. Did the decedent's interest in the bonds of the Northern Pacific Company, which, together with the stock of the American Sugar Refining Company, were pledged with the Mercantile Trust Company for the payment of the loan made to the decedent by the company, constitute property within this state at the date of his death? The title to the bonds was in the Mercantile Trust Company, and at the time of decedent's death his interest in the bonds was merely a right to redeem them from the Trust Company by payment of the loan for which they were pledged. There is no evidence that any demand was made upon the decedent by the Trust Company for the payment of the loan. Until such a demand had been made the decedent was not indebted to the Trust Company, and the company would have no right to dispose of the collateral security. Therefore it would appear that at the time of decedent's death he did not own the bonds, or any part of them, and that his only interest in them was a right to redeem them. This, however, was not a right to any particular bond or bonds; it was not a right to any particular property located in this state. It was merely a right of redemption, and as such it had its situs at the place of decedent's domicile. Such a right or interest, when owned by a nonresident, is not subject to a transfer tax in this state. Matter of Phipps, 77 Hun, 325, 28 N. Y. Supp. 330, affirmed 143 N. Y. 641, 37 N. E. 823; Matter of Chabot, 44 App. Div. 340, 60 N. Y. Supp. 927, affirmed sub nom. Matter of Zefita, 167 N. Y. 280, 60 N. E. 598.

Therefore the appraiser erred in reporting as taxable that proportion of the difference between the amount loaned to the decedent by the Mercantile Trust Company and the value of the security pledged with the said company which the value of the bonds bore to the value of the entire security. The same reasoning applies in regard to the value of decedent's interest in the stock of the General Electric Com-

pany pledged with foreign creditors for the payment of loans made by them to the decedent. There was no proof before the appraiser that the loans had been paid, or that the collateral had been sold by the foreign creditors. Therefore at the time of decedent's death his interest in such collateral consisted of a right to redeem, and as this was not a right to any share or shares of stock of the General Electric Company, but merely a chose in action it was not taxable under the Transfer Tax Law of this state.

[5] As there was no proof before the appraiser that at the time of decedent's death a demand for payment had been made by any of the New York creditors whose loans to the decedent were secured by collateral pledged by him, these loans did not constitute debts due by the decedent to New York creditors at the date of his death, and the value of the shares of stock of General Electric Company held by the decedent and which were not pledged for the payment of any indebtedness constituted a part of the decedent's taxable assets in this state. It appears, therefore, that the appraiser's report should be remitted to him for correction by excluding from the taxable assets of the decedent's estate the value of any interest in the bonds pledged with the Mercantile Trust Company as collateral security, and also any equity in the stock of the General Electric Company pledged with the nonresident creditors for the payment of loans made by them to the decedent. The only taxable assets were the shares of the General Electric Company which were not pledged, and from the value of these should be deducted the New York commissions and expenses of administration. .

Order fixing tax reversed.