SECURITY TRUST COMPANY, EXECUTOR OF LEONARD MORSE, DECEASED, RESPONDENT, v. EDWARD I. EDWARDS, STATE COMPTROLLER, APPELLANT.

Argued March 13, 1917—Decided June 18, 1917.

The interest of a non-resident deceased pledgor of stock of a New Jersey corporation in such stock is subject to the transfer tax imposed by the act of 1909 (*Pamph. L.*, p. 325; *Comp. Stat.*, p. 5301), as amended in 1914. *Pamph. L.*, p. 267.

On appeal from the Supreme Court, whose opinion is reported in 89 *N. J. L.* 396.

For the appellant, *John W. Wescott,* attorney-general, and *John R. Hardin.*

For the respondent, *Lum, Tamblyn & Colyer, Ralph E. Lum* and *Joseph F. McCloy* (of the New York bar).

The opinion of the court was delivered by

TRENCHARD, J. This is an appeal by the state comptroller, defendant in *certiorari,* from a judgment of the Supreme Court setting aside an inheritance tax levied under the act of 1909 (*Pamph. L.,* p. 325; *Comp. Stat.,* p. 5301), as amended in 1914. *Pamph. L.,* p. 267.

The prosecutor below, Security Trust Company, a Connecticut corporation, is the executor of the will of Leonard Morse who died resident in Hartford, Connecticut, on April 2d, 1915. Morse left no real estate whatever, either within or without New Jersey. His gross estate amounted to $64,-523.85, and by the will went entirely to collaterals or those unrelated to the testator. The estate consisted largely of certain securities, viz., corporate stock and four bonds appraised in the aggregate at $63,285.50. All of these securities had been pledged by Morse in his lifetime, accompanied by a power of attorney in blank to the Phoenix National Bank of Hartford, Connecticut, to secure his promissory note of $37,500 upon which there was due $5.21 of interest, together with all of the principal amount, at the time of his death. It does not appear that this note had been called prior to the death of Morse or that the pledgee had caused any of the securities to be transferred to it or that any demand had been made upon him prior to death for the payment of the note.

Among the securities so pledged were New Jersey stocks appraised in the aggregate at $28,249.

The comptroller appraised the New Jersey stocks at the figures above mentioned, and the decedent's interest in the

New Jersey stocks at the sum of $11,507. This amount was obtained by prorating the amount of the loan together with such portion of the general deductions as the other assets were insufficient to meet, over all of the stocks pledged. The value of the equity in the New Jersey stocks was arrived at by applying to the equity in all of the stocks the fraction represented by the value of the New Jersey stocks over the value of all the securities pledged.

Treating the gross estate for the purpose of taxation as the value of the equity in all of the stocks, plus the value of the other assets, the comptroller arrived at the proportion demanded by the method of computation prescribed for non-resident estates in section 12 of the act (namely, the ratio of the New Jersey property to the total property wherever situate), which proportion was found to be forty-two and six-tenths per cent. The tax was then calculated in the manner prescribed in that section and found to be $527.55.

The comptroller refused to consent to the transfer of the New Jersey stocks to the executor of the decedent, unless such tax upon the decedent's equity therein was paid, and accordingly it was paid.

The amount of the tax, *i. e.*, the method of computation, is not challenged, and with that we are not concerned.

The only question presented by the record, and, indeed, the only question argued, is that decided by the Supreme Court, namely, Is the interest of a non-resident deceased pledgor of stock of a New Jersey corporation in such stock subject to the transfer tax imposed by *Pamph. L.* 1909, *p.* 325, as amended by *Pamph. L.* 1914, *p.* 267?

We are of the opinion that that question must be answered in the affirmative.

The view of the Supreme Court was that Morse had ceased to be the owner before his death; hence there was no succession. The court does, indeed, refer to his "interest" in the stock, but the tenor of the opinion appears to be that there is no taxable succession if the decedent owned anything less than the entire legal and beneficial interest in the stock.

Such a view ignores the language of the statute (*Pamph. L.* 1909, *p.* 325, as amended by *Pamph. L.* 1914, *p.* 267), taxing "* * * the transfer of any property * * * or of any interest therein or income therefrom, in trust or otherwise. * * * When the transfer is by will * * * of shares of stock of corporations of this state, * * * and the decedent was a non-resident of the state at the time of his death * * *." Section 1.

"26. The words 'estate' and 'property' wherever used in this act * * * shall be construed to mean the interest of the testator * * * passing or transferred to the (successors) * * *. The word 'transfer,' as used in this act, shall be taken to include the passing of property, or any interest therein, in possession or enjoyment, present or future," &c. Section 26.

The only authority cited by the court below is that of Surrogate Fowler, of New York county, *In re Ames' Estate* (1913), 141 *N. Y. Supp.* 793. But that decision is in conflict with the doctrines of the highest court of New York, as we shall show.

We think that a non-resident pledgor's interest in New Jersey stocks is a property interest which has a *situs* here for the purpose of succession taxation.

As between the pledgor and pledgee, the pledgor is still the general owner. The pledgee has a special property only, and upon payment of the debt this is extinguished.

That rule has been frequently stated and applied without challenge by English judges.

In the early case of *Mores v. Conham* (1610), *Owen* 123; 74 *Eng. Reprint* 946, the court recognized that the right of the pledgee was but a special interest.

In *Coggs v. Bernard* (1702), 2 *Ld. Raym.* 909; 1 *Sm. Lead. Cas.* *199, Chief Justice Holt stated the same principle. The learned annotator (at *p.* *228) says:

"A pawn never conveys the general property to the pawnee, but only a special property in the thing pawned; and the effect of a default in payment of the debt by the pawnor is, not to vest the entire property of the thing pledged in the

pawnee, but to give him a power to dispose of it, accounting for the surplus, which power, if he neglected to use the general property of the thing pawned continues in the pawnor, who has a right at any time to redeem it."

Another leading case is *Donald* v. *Suckling, L. R.,* 1 *Q. B.* 585; 35 *L. J. Q. B.* 232.

Another famous case is *Sewell* v. *Burdick* (1884), 10 *App. Cas.* 74; 54 *L. J. Q. B.* 156, where Lord Fitzgerald says that the pledgees "acquired a special property in the goods, with a right to take actual possession should it be necessary to do so for their protection or for the realization of their security. They acquired no more, and, subject thereto, the general property remained in the pledgor."

A very recent opinion by the privy council in a prize case is *The Odessa,* 1 *A. C.* (1916), 145; *affirming, A. C.* (1915), 52. Prior to the outbreak of the European war, German owners of the cargo had by assignment of the bills of lading pledged the cargo to British bankers for advances made prior to the outbreak of the war. After the war began, and while the vessel was on the high seas, the cargo was seized and condemned as prize. The contest was between the British pledgees and the crown. Lord Mersey, speaking for the court, says: "All the world knows what ownership is, and that it is not lost by the creation of a security upon the thing owned."

Our own decisions are uniformly to the same effect. In *Donnell* v. *Wyckoff (Supreme Court,* 1886), 49 *N. J. L.* 48, wherein the subject-matter of the pledge was corporate stock, Mr. Justice Depue said (at *p.* 49) :

"Upon a pledge of property as security for a debt, the pledgee has only a special property. The general property is in the pledgor, subject to the rights of the pledgee."

In *Broadway Bank* v. *McElrath (Chancellor Green,* 1860), 13 *N. J. Eq.* 24, the conflicting rights of a pledgee of stock and the attaching creditors of the pledgor were dealt with. It would appear from the opinion that the court entertained no doubt that the interest of a non-resident pledgor in stock of a New Jersey corporation pledged to a non-resident was subject to attachment, under the New Jersey statute, and the

court (on *p.* 26) says that the rights of the creditors were unquestioned, except so far as they conflict with the rights of the pledgee. And, speaking of the effect of a pledge, says:

"The absolute ownership of the stock, it is true, was not transferred, nor was it intended it should be."

In *Meisel* v. *Merchants National Bank* (*Court of Errors and Appeals,* 1913), 85 *N. J. L.* 253, it was said, in effect, that the pledgor has the right to bring a possessory action against the pledgee to recover the stock itself, providing only he makes and keeps good a tender of the debt.

In *McCrea* v. *Yule,* 68 *N. J. L.* 465, the Supreme Court, in 1902, in a case of an assignment of a chose in action as collateral security, said (at *p.* 467):

"A pledgee of personal property, assigned as collateral security, has the right to collect the interest, dividends and income accruing on the collateral assigned, accounting to the pledgor upon the redemption of the pledge. In making such collections the pledgee is a trustee of the pledgor to see to the proper applications of the funds collected or to refund the same to the pledgor if the debt be otherwise paid."

In *Mechanics' Building and Loan Association* v. *Conover,* 14 *N. J. Eq.* 219 (reversed on other grounds, *Herbert* v. *Mechanics' Building and Loan Association,* 17 *Id.* 497), the court said that when shares of stock are pledged, they "remain the property of the shareholder for every purpose excepting that of defeating the lien" of the pledgee.

In the United States Supreme Court, drawing the familiar distinction between a chattel mortgage and a pledge, Mr. Justice Pitney says, in *Dale* v. *Pattison,* 234 *U. S.* 399, 405:

"On the other hand, where title to the property is not presently transferred, but possession only is given, with power to sell upon default in the performance of a condition, the transaction is a pledge, and not a mortgage."

The law of Connecticut appears to be to the same effect. In *Robertson* v. *Wilcox* (1870), 36 *Conn.* 426, the highest court of that state (at *p.* 430) said:

"A pledge of property does not carry with it the title to the thing pledged. The title remains as before. All that

passes to the pledgee is the right of possession, coupled with a special interest in the property, in order to protect the right."

It is this intangible proprietary interest of the pledgor in the corporate property that the pledgor's executor succeeds to.

Now, the doctrine is too well established to need discussion that the stock of a New Jersey corporation has a *situs* in this state and is subject to succession taxation here. *Dixon* v. *Russell (Court of Errors and Appeals)*, 79 N. J. L. 490; *Carr* v. *Edwards*, 84 *Id.* 667; *Hopper* v. *Edwards*, 88 *Id.* 471.

The matter is nowhere more fully and ably discussed than in the opinion of Mr. Justice Garrison, in the Supreme Court, in *Neilson* v. *Russell* (1908), 76 N. J. L. 27; reversed on another point, *Id.* 655 (1908). The following is quoted therefrom, not for the purpose of supporting this elementary proposition, but as illuminating the precise question under review in the present case (at *p.* 35) :

"In this country, where the general doctrine of the state courts is that the *situs* of property governs its liability to succession taxes, the weight of authority is that the stock in a corporation is subject to the imposition of succession taxes by the state that created the corporation, and that in this regard the place of residence of the deceased stockholder is immaterial."

The case of *Amparo Mining Co.* v. *Fidelity Trust Co. (Court of Errors and Appeals*, 1909), 75 N. J. *Eq.* 555; affirming opinion of Vice Chancellor Stevenson, in 74 *Id.* 197, is also instructive. There the jurisdiction of the courts of the state of incorporation over the enforcement of property interests in stock as against non-residents was upheld.

It being firmly established that the stock is subject to succession taxation by the state, it necessarily follows that not only is the entire legal interest in the stock subject to taxation by the state, but as well every undivided or fractional interest in any such given share of stock, and as well any proprietary interest in such share of stock though it be an interest of a quality different in character from a mere frac-

tional or other legal interest less than the whole. The interest of a pledgor of a share of stock being such a proprietary interest in the share of stock itself, and the stock being taxable, it follows that the pledgor's interest is taxable, whether it be called an equity of redemption or by some other name.

We need not dwell on the distinctions which exist in respect to *situs* for the purpose of property taxes, on the one hand, and succession taxes on the other. The argument of respondent is not forwarded by calling the pledgor's right an equity of redemption, or *chose in action,* or intangible. The stock itself is a *chose,* and intangible. While an intangible right has really no locality, it must, in the nature of things, have ascribed to it a *situs* for legal purposes. The *situs* is based on the power of the sovereign, and if the sovereign has power to deal with it effectively as a property right, it may tax it as having an ascribed *situs* within its jurisdiction.

The Amparo Mining Company case, *supra,* at once suggests such power. We note, especially, the attitude of the court towards the rights of *bona fide* holders. If any one class of such holders was more prominently in the mind of the court than another, it was probably that of pledgees. But the court did not turn aside from rendering judgment because of the possibility that a non-resident owner had pledged his stock to a non-resident which, if respondent's argument be sound, would at once have ousted the court of jurisdiction.

It can hardly be doubted that the pledgor could resort to our courts to enforce a conflicting property right in respect to his stock; and that because he could obtain effective relief nowhere but in the domicile of the corporation. To be more concrete, suppose that Morse, a resident of Connecticut, had pledged New Jersey stock to residents of Massachusetts and New York jointly, and that the latter wrongfully delivered the same to a resident of Oregon, and that the stock had no market value (see *Safford* v. *Barber,* 74 *N. J. Eq.* 352), where could he obtain relief except in New Jersey? *Gregory* v. *New York, Lake Erie and Western Railroad Co.,* 40 *Id.* 38. Who would doubt that such a suit would be *quasi in rem?*

The New York courts recognize that the pledgor has a *residuary interest.*

In *Warner* v. *Fourth National Bank,* 115 *N. Y.* 251, the interest of a non-resident pledgor of notes held in pledge by a resident was held to be subject to attachment in New York state. Judge Gray said: "The title to property may remain in the pledgor, but the pledgee has a lien, or special property in the pledge, which entitled him to its possession against the world." And further: "The pledgor's residuary interest in the pledge constitutes a claim or demand upon the pledgee, which is property, and hence may become the subject of attachment." And again: "We think the attachment in question here operated to secure to the (attaching creditor) a lien upon the pledged property, to the extent of the interest ·of the (pledgor), and that interest was the right to the pledged property, or so much of it, or of its proceeds from any collection, as remained after the satisfaction of the pledgee's claim for advances."

See, also, opinion of the same judge in *Simpson* v. *Jersey City Contracting Co.,* 165 *N. Y.* 193, where it is said: "The pledgee obtains a special property in the thing pledged, while the pledgor remains general owner."

The most ·distinguished New York judge of all times, Chancellor Kent, expressly held, in *Cortelyou* v. *Lansing* (1805), 2 *Cai. Cas.* 200, that the legal property in a pledge does not pass as in the case of a mortgage with defeasance; that the. general ownership remained with the pledgor and only a special property passed to the pledgee, and further, that the pledgor's interest passed to his administrators.

If the stock has a *situs* here, where else can be the *situs* of the *residuum?*

If the interest of the pledgee is less than absolute and unqualified ownership, how can the residuary interest of the pledgor have a *situs* other than that of the subject of the pledge? The stock never ceases to have a *situs* in this state, whoever may be the owner. *Neilson* v. *Russell, supra.* If the transfer of full ownership does not change the *situs* of the property, how can the transfer of a limited right take out of

the jurisdiction or affect the *situs* of what of the rights of ownership remain after such partial transfer?

The tax is *in rem;* the *res* is the succession to the proprietary right that a stockholder has in a corporation of this state. Unless the whole of the proprietary right be transferred, the remainder must be taxable here as property of the pledgor having a *situs* here, to which his executor succeeds. Of course, the stock has a *situs* here; and the general property in the thing pledged must continue, notwithstanding the pledge, to have a legal *situs* here for the purpose of the taxation of the succession to such general property.

The power to tax being established, we have no difficulty in finding in the statute the intention to do so. It is clear that every proprietary interest of whatever nature in those species of property subject to tax is included. The fourth subdivision of section 1 imposes tax "upon the *clear* market value" of the property, which impliedly recognizes that the property taxed may be encumbered. Sections 2 and 3 tax future and contingent estates of every character. Section 12 forbids the transfer, by a corporation, without the comptroller's waiver, of shares of stock of, "or other interests in," the corporation. The last paragraph of section 12 (the ratio provision) necessarily contemplates that every kind of property interest be brought into hotchpot, and puts the non-resident on the same footing as the resident. Section 26 says that the word "transfer" shall be taken to include the passing of "any interest" in property, present or future.

Such words as "property" and "interest" are ordinarily used in a revenue act in a popular sense, and should be broadly construed. *Smelting Company* v. *Comm. of Inland Revenue,* 2 Q. B. (1896), 179; 65 L. J. Q. B. 513; *affirmed,* 1 Q. B. (1897), 175; 66 L. J. Q. B. 137; *In the Matter of Whiting,* 150 N. Y. 27.

The pledgor's "equity" certainly is property in a popular sense. It has value; it may be sold; it may be encumbered; it may be made the basis of extending credit.

See, also, as to the extensive application of the language of the act, *Hopper* v. *Edwards,* 88 N. J. L. 471.

Some stress is laid below by the respondent on the rights of the pledgee, and their supposed infringement by the comptroller, but they are not here involved. No pretence is made by the state that its lien on the stock is other than inferior to that of the pledgee. The latter is not before the court, and there appears in the case nothing of interference with his rights. Certain practical difficulties in the collection of such a tax as this may be compassed within the imagination, but the present case is free therefrom.

It is enough for the decision of this case that the comptroller's consent to transfer was requested by the executor of the decedent's will; that he refused unless payment of the tax was forthcoming; that the tax was paid, the waivers issued, and the stock transferred. The only question before the court is, Had the legislature the power to authorize the assessment, and did it do it?

In the opinion of the Supreme Court (but whether it was the basis of the decision we cannot tell), mention is made of the possibility that the "equity of redemption" be rendered valueless by a resort to the security after the pledgor's death. This possibility would, with equal force, support the proposition that no tax should be levied on an equity in real estate, since that might be foreclosed. This might be due to the owner's neglect to pay the encumbrance, or for other reasons. Likewise, a house might be destroyed by wind or flood; a chattel burnt or lost; the assets of the estate might be embezzled; a debt become uncollectible by incompetent management; a security valueless by fluctuations in the market or the receipt of "news from abroad."

The tax is on the succession, which occurs *at death;* and is then *due and payable.* Section 1. If the subject-matter of the succession be of value at that time, *and the universal or particular successors choose to accept the succession,* the state may then levy, as of the situation then existing, a premium upon the privilege so to succeed. What becomes of the thing after the state has admitted the successors to the succession is not of its concern. And so hold the authorities. See *Tilford* v. *Dickinson,* 79 *N. J. L.* 302, 305; reversed on another

point, 81 *Id.* 576; *McCurdy* v. *McCurdy,* 197 *Mass.* 248; *In re Penfold's Estate,* 216 *N. Y.* 171.

The argument of respondent that due prudence and caution requires that assessment be withheld pending realization on the pledge is self-destructive. It will not do to say that the state should take into computation the loss or shrinkage, if any, which has taken place in the meantime. It would not be argued that if there be an increase in value a tax should be laid on this. Of course, the state is not bound to stay the exercise of the taxing power at the pleasure of the pledgee, and chance the collection of a tax on his judgment and honesty, and on the variability of the market's demand for the thing to be sold.

In the case at bar, it appears that certain of the New Jersey stocks were sold by the pledgee shortly after Morse's death, *at a price in excess of the appraisement.* Certainly, this did not render valueless the "equity" in these stocks. It was a realization of their value. While the proceeds were applied in reduction of the principal of the debt, this increased correspondingly the "equity" in the other stocks. It is as if the proceeds of the Bethlehem steel preferred which was sold were paid to the respondent, and by it applied to the payment of the testator's legal obligation.

The validity of the tax, therefore, is not affected by any of the foregoing matters.

Upon the whole, our conclusion is that the interest of a non-resident deceased pledgor of stock of a New Jersey corporation in such stock is subject to the transfer tax imposed by the act of 1909 (*Pamph. L., p.* 325; *Comp. Stat., p.* 5301), as amended in 1914. *Pamph. L., p.* 267.

The judgment below will be reversed, with costs, with direction for the entry of an order below affirming the assessment and tax.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, GARRISON, TRENCHARD, BERGEN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 10.