1. TAXATION (§ 856*)—TRANSFER TAX ACT—CONSTITUTIONALITY.

> The New York Transfer Tax Act (Consol. Laws 1909, c. 60, §§ 220–245) provides for the imposition of a tax upon the right to succeed to property, and not upon the property itself.

> [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1673; Dec. Dig. § 856.*]

2. TAXATION (§ 895*)—TRANSFER TAX—APPRAISEMENT—DEDUCTIONS—"CLEAR MARKET VALUE."

> Under Tax Law (Consol. Laws 1909, c. 60) § 220, subd. 7, providing that the transfer tax shall be imposed upon the clear market value of the property transferred by will or by the intestate laws, the transfer takes effect upon the death of the decedent, at which time the right of the legatee or beneficiary accrues, and hence the "clear market value" of the property must be ascertained as of the date of decedent's death, without deduction of the inheritance taxes imposed by other states upon the succession to shares of stock of corporations organized therein.

> [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

In the matter of the estate of Josephine Penfold.   From an order entered upon the report of the transfer tax appraiser, refusing to deduct the inheritance tax imposed by other states on property located therein, and transferred by the will of decedent, a resident of this state, the executor appeals.   Affirmed.

Mitchell & Mitchell, of New York City, for executor.

Frank T. Warburton, of New York City, for Ladies' Helping Hand Ass'n.

Daly, Hoyt & Mason, of New York City, for Bryson Day Nursery.

De Forest Bros., of New York City, for Presbyterian Hospital.

Strong & Cadwalader, of New York City, for St. Mary's Free Hospital and New York Ass'n for Improving the Condition of the Poor.

Lexow, Mackellar & Wells, of New York City, for Five Points House of Industry.

Parsons, Closson & McIlvaine, of New York City, for New York City Mission & Tract Society.

Stanley W. Dexter, of New York City, for Children's Aid Society.

Stetson, Jennings & Russell, of New York City, for Grenfell Ass'n of America.

W. H. Van Steenbergh, of New York City, for Board of Foreign Missions R. C. A.

James R. Sheffield, of New York City, for Adirondack Cottage Sanitarium.

Richmond Weed, of New York City, for Home for Old Men and Aged Couples.

Harris & Towne, of New York City, for American Bible Society.

Thomas E. Rush, of New York City, for State Comptroller.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

FOWLER, S.  The question which this appeal presents for deter-
mination is whether the inheritance tax imposed by a foreign state
upon the succession to property located in such state, but transferred
by the will of a resident of this state, should be deducted from the
market value of such property by the transfer tax appraiser designated
to appraise the value of the estate for the purpose of the transfer tax
in this state.                                                          .
The decedent, who was a resident of this state, died in 1912.  Among
the assets of his estate were shares of stock in foreign corporations.
The respective states in which these foreign corporations were organ-
ized, viz., Utah, Minnesota, Wisconsin, and New Jersey, imposed a
transfer tax upon the succession to the property represented by such
stock.  The executor of decedent's estate submitted to the appraiser a
verified statement showing the amount of tax imposed by the various
foreign states upon the property of the decedent located in such
states, and asked that the appraiser deduct such taxes from the market
value of the stocks in ascertaining their value for purposes of taxation
in this state.  The appraiser refused to make the deduction, and the
executor has taken this appeal from the order entered upon his report.
Whatever the personal opinion of a judicial officer may be concerning
the policy of the taxing acts of the government which he represents—
and I have not hesitated to express my own opinion on the general
subject of taxation at the end of this opinion—he must apply the law
as it is.  I confess that it seems to me hard in principle that an ab-
straction, and not property, should be made the subject of taxation.
To exact a tax in the last resort on property which has already been
appropriated by a co-ordinate taxing power seems to me indefensible
in principle; but if such is the law, and I think it is, it must be fol-
lowed by me, regardless of my own theories or convictions.
[1, 2] In the matter of Gihon, 169 N. Y. 443, 62 N. E. 561, it was
held that the amount of the federal inheritance tax assessed upon the
succession to the property of a decedent should not be deducted from
the assets of the estate otherwise taxable in this state.  The appellant
attempts to distinguish that case from the matter under consideration
by alleging that the war revenue tax was a general tax existing con-
temporaneously with the New York State transfer tax act (Consol.
Laws 1909, c. 60, §§ 220–245), and that the tax was imposed upon the
right to succession of the whole of the legacy or distributive share,
irrespective of whether the property was situated in one state or in
several states, while the inheritance tax statutes of Utah, Minnesota,
Wisconsin, and New Jersey impose a tax upon the specific property.
A careful perusal of the transfer tax statutes of the states mentioned
fails to disclose that they impose a tax upon the specific property liable
to taxation.  On the contrary, it appears that the language of the in-
heritance tax statutes of those states follows very closely that of the
transfer tax statute of the state of New York, and even adopts the
phraseology of our statute in the clauses which enumerate and describe
the transfers that are taxable.  The constitutionality of the New York
transfer tax act has been sustained upon the ground that it provides

for the imposition of a tax upon the right to succeed to property, and not upon the property itself. Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; Orr v. Gilman, 183 U. S. 278, 22 Sup. Ct. 213, 46 L. Ed. 196; Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439.

The provisions of the statutes of the other states of the Union, directing that the property therein located shall not be transferred until the inheritance tax is paid, do not imply that the tax is imposed upon property; they are inserted for the purpose of enabling the state to compel payment of the tax. If a state where the property of a nonresident was located at the time of his death permitted such property to be transferred before the inheritance tax was paid, it might be unable to collect the tax. In order to avoid the possibility of being unable to compel payment of the tax in the event of the property being removed beyond the jurisdiction of the state before the tax was paid, the different states have embodied in their respective tax statutes a clause directing that the property of a nonresident shall not be transferred until the tax is paid. But this does not make the transfer tax a tax upon the property; it is merely a method of procedure adopted to insure payment of the tax.

Our statute provides that the tax shall be imposed upon the clear market value of the property transferred. Subdivision 7 of section 220 of the Tax Law (Consol. Laws 1909, 60). The transfer is effected by the will of the decedent or by the intestate laws of this state, and takes effect upon the death of the decedent. Matter of Seaman, 147 N. Y. 69, 41 N. E. 401; Matter of Davis, 149 N. Y. 539, 44 N. E. 185. The right of the legatee or beneficiary accrues at that time. Therefore, the clear market value of the property must be ascertained as of the date of decedent's death, without taking into consideration what may subsequently be paid in the form of a tax for the privilege of permitting the legatee to take the property bequeathed. The state now imposes a tax as a condition of permitting the legatee or beneficiary to take the property. It is immaterial from what source the legatee or executor procures the tax; but the states, for their own protection and to insure the collection of the tax, have provided that the executor or administrator shall be liable for its payment, and, in the case of a nonresident, that the property shall not be transferred until the tax is paid. But the tax is not necessarily payable out of the particular property bequeathed or inherited. It may be paid from any source. If, instead of paying the tax out of the property bequeathed, it is paid by the legatee out of his individual property, it becomes at once apparent that the value of the property transferred is its clear market value at the date of decedent's death without any diminution on account of the tax imposed by the state as a condition of the transfer. Ordinarily the tax is deducted by the executor from the amount of the bequest and the balance paid to the legatee, but this is done for convenience, and not because the legacy is the primary fund for the payment of the tax. The statute does not say that the tax shall be imposed upon the net amount which the legatee receives, but it does provide that the

tax shall be imposed upon the clear market value of the property transferred by the will of the decedent. The amount of the tax is not an expense of administration, because the tax is imposed upon the interest of the legatee or beneficiary, and not upon the estate. It would therefore appear that an inheritance tax imposed by other states of the Union upon the property of a resident of this state should not be deducted from the market value of such property in order to ascertain its value for the purpose of the transfer tax in this state.

There are two theories of taxation which have come down the ages of organized government : The primary theory is that taxation is an orderly and equalized contribution to the legitimate expenses of government; the other that taxation is an arbitrary levy by the supreme power of the state for any purpose which for the time being seems expedient. The primary conception or theory is consistent with constitutional and free government; the other theory is consistent only with arbitrary government or tyranny. History shows that tyranny may exist under popular forms. This fact was conceded by the framers and founders of the great Constitution, which they had sealed with their blood. The familiar statement of Chief Justice Marshall "that the power to tax is the power to destroy" (McCulloch v. State of Maryland, 4 Wheat. 316, 431, 4 L. Ed. 579) was an unfortunate sequel to so admirable a form of government. If examined critically, the statement of the great Chief Justice will be found to authorize a perversion of political power. If government is a delegation from the governed, and free government is always that, government has no inherent power to destroy the property of its citizens, except in time of war and to stay devastation in time of peace. The power to destroy is not the equivalent of the taxing power. That every government is invested with the power to lay taxes is a truism of political philosophy. It is an inherent necessity. But free governments may tax only pursuant to principles of economic justice and of political freedom. That the statement of Chief Justice Marshall is to some extent responsible for extravagant notions and exactions only too prevalent in the modern state can hardly be denied. Its inaccuracy detracts from his distinguished service to this country.

If the constitutional boundaries of the taxing power are unlimited, as the statement of Chief Justice Marshall implies, they nevertheless have a natural boundary in economic necessity, which must finally curb superfluous and mischievous governmental activities, or extravagance, on the part of the state. The natural limitations on the taxing power will be found to depend on the same causes which produce or underlie economic prosperity. When taxation persistently violates these causes, government must give way, or in the end be succeeded by some other form of government. While the submission to any governmental measure is in this country to be depended on in times of prosperity, such submission will not survive the prosperity of a country which persistently violates economic freedom, or inexorable economic laws. The law of gravitation is no more fixed than the laws which promote or retard prosperity. There is another consideration

now always to be regarded by the taxing power. Property only is the subject-matter of taxation. Privilege has no existence independent of property, and the idea that it has is a fallacy. Property is a form of credit. Subtract credit from property, and it becomes worthless. In these modern days property or credit has become as mobile as labor, which is only another form of property. If credit is unduly alarmed, the owner will remove himself to a state where credit is secure. There is no political impediment to denationalization or repatriation in this century. Creditors will ultimately, therefore, congregate in the sound economic state and abandon the unsound. Not only is this last statement a fact, but it is also a fact that no other principle is better established than that excessive or false taxation is both inexpedient and in the end nonproductive. It is not correct to assume that the right of private property is in America a concession from the state, and therefore that property is subject to be returned to the state on demand. When this government was formed, private property already existed. The state with us did not originate property or the rights of property, and the political concept that private property flows from the state has no place in our constitutional history. Such a concept is with us an anachronism.

Thus far the history of this government has demonstrated that a truly popular form of government is the most just and conservative. Our government has been the envy and the despair of other nations. It seems a sad pity when we abandon conservatism and resort to the false theories and desperate expedients of dying forms of government on the edge of economic destruction. We should persist in the safer paths which have led us to success. The interest of most thinking men in forms of taxation is that such forms shall be consistent with the endurance of free government, and not with the principles destructive of it. Most wise men are convinced that free government and unjust or arbitrary taxation cannot coexist. Property is both an instinct and the extension of liberty, and, when the rights of property are persistently invaded by government, self-preservation will surely lead men to subvert that government in the end. These are, I venture to think, sound and wholesome reflections on a subject now too little considered. The theory of the political opportunist that taxation may serve to adjust social and economic inequalities is fundamentally unsound. Those who are really in sympathy with their poorer brethren, who prefer the simple existence of the poor to that of the rich, or elementary simplicity to the miserable redundancies of the richer existence, may be trusted to support every wise measure which has the betterment of the poor for its real end, provided that measure coincides with the grammar of political and economic science. Such men believe that the demonstration of mathematics and experience are to be preferred to political empiricism, however alluring. The difference between such men and those more progressive is only one of method. All true economic betterment should be based on actuarial data which is incontestable. It cannot be based on confiscatory taxation or destruction of property if it is intended to endure.

But however indefensible, in the abstract, the order fixing the tax in this matter may seem, it is in accordance with positive law and high authority construing that law, and it must be affirmed. Decreed accordingly.